The Judges delivered their opinions.*
Judge Care.
This case brings before us, for the first time, the question whether an administrator de bonis non can, by bill in equity, call the representative of the first administrator to account, for assets of the first intestate, wasted or converted by the first administrator. This is a question, not of practice, but of sheer law; depending on the extent of the commission of the administrator de bonis non, what are his powers, and how far he represents the estate of his intestate.
Before I enter on the consideration of this subject, I will say a word with respect to the practice of the country, so much relied on. If it had been a general practice for-administrators de bonis non, to bring such suits, I should have thought that during an attendance at the bar of fifteen *53 years, and a service in the Court of Chancery of twelve, I should sometimes have met with bills of this kind. Yet this is the first that I have the least recollection of ever having seen. I am equally free to admit, that I have never known a suit brought by creditors against the representative of an executor or administrator, for waste committed by him. In stating my own experience, I would by no means be understood to doubt the accuracy of those, who say they have known this practice, but merely to question whether it has been of such wide extent, or frequent occurrence, as to entitle it to be called the settled practice of the country. -But, admit that such is the practice; yet, when this tribunal is called upon to declare the law, I apprehend that such practice deserves so much weight only, as to insure a close and attentive examination of the foundation on which it rests, and a determination not to disturb it, unless we are convinced that it is in violation of law. But, if we be so convinced, then, I hold, that however general, however ancient the error, we are bound by the highest of all sanctions, to correct it with an unshrinking hand; for, to this Court is confided the duty of expounding the law in the last resort.
In the discussion of this question, I will enquire: 1st What is the law in that country from which we derive the general features of our system. 2d. Whether our own statutes have altered the law as settled there.
1. Testaments are of high antiquity, coeval with the first rudiments of the law. When a person dies without disposing of his personal property, he is said to die intestate; and in such cases, it was said (though this is doubted in 1 Com. Dig. 491,) that by the old law, the King was entitled to seize upon the goods as parens patrirn. The Crown invested the prelates with this branch of its prerogative, upon the intendment of law with Perkins, that spiritual men are of better consciences than laymen, and have more knowledge what things would conduce to the benefit of the soul of the deceased. The goods of intes-' *54 tates being thus vested in the ordinary, he might give or sell them, and dispose of the,money in pios usus, being, as to this the King’s Almoner. For their conduct in the discharge of this solemn trust, the reverend prelates were accountable to God and their own consciences only. They abused their trust most iniquitously; taking to themselves the whole of the property, after the partes rationabiles (two thirds) of the wife and children were deducted, and leaving the debts unpaid. To remedy this abuse,.the Statute of Westminster, 2d chap. 19, enacted, that the ordinary should be bound to answer the debts of the intestate, so far as his goods would extend. Though this bound them to pay the debts, the residuum still remained in their hands, till the Statute of 31st Edw. 3, chap. 11, took that, together with the administration, from them; enacting, that in cases of intestacy, the ordinary shall depute the nearest and most lawful friends.of the deceased, to administer his goods-; which deputies the statute places on the same footing with executors, with regard to suits and accounting. This is the origin of administrators, who were only the officers of the ordinary, appointed in pursuance of this statute.
The 21st Hen. 8, chap. 5, enlarges a little the power of the ordinary, permitting him to grant administration, either to the widow or the next of kin, or both, at his discretion; and where two or more are in the same degree, to appoint which he pleases. An executor being the creature of the will, and his power founded on the special confidence of the deceased, he is allowed-to transmit that power to another, in whom he has equal confidence. The executor of A’s executor, therefore, is to all intents and purposes, the executor and representative of A. himself. But the administrator, being merely the officer of the ordinary, prescribed to him by law, and in whom the deceased had reposed no trust at all, could not transmit his office to another; but, if he died before closing his administration, it «suited back to the ordinary to appoint him a successor. *55 So, too, when an executor died intestate, his administrator did not represent the testator; and in this caso also, it devolved on the ordinary to commit administration afresh, with the will annexed. It is the officer thus appointed, whose powers we are now to examine.
He is appointed to finish a business already commenced. It is not, therefore, a full and immediate administration which is committed to him, such as is granted to a temporary administrator; but an administration de bonis non ad~ ministratis. Between himself and his predecessor, there was no privity. His commission gave him power to act, and to represent the testator or intestate, so far, (and so far only,) as there remained unadministered “goods, chattels and credits, which were of the testal or or intestate, at the time of his death.” This definition turns our minds at once to the question, what amounts to an administration of assets, so far as regards the administrator de bonis non» Executors and administrators took the legal title to the goods and chattels of the deceased; nor were they, before the Statute of Distributions, 22d and 23d, ch. 2, (1670,) bound to distribute the surplus after the payment of debts and legacies. Both held in autre droit; and therefore, neither could dispose by will of the property remaining in specie; but both had the power, while living, of changing, altering, and converting the property; and whatever was thus altered or converted, became their own goods, anil descended, On their deaths, to their own representative. Such change or conversion of the goods, was, (so far as regarded the administrator de bonis non,) a complete administration, and put them as effectually beyond the reach of his commission, as if they had never belonged to the testator or Intestate. To shew that this is so settled in England, I will cite a few out of a vast multitude of cases.
In 2 P Wms. 340, Attorney General v. Hooker, Lord Chancellor King said, “ As to what has been urged, that if an executor dies intestate, all the personal estate, the property whereof Is not altered, shall go to the ailnjinis *56 trator de bonis-non, and not to the next of kin of the executor. This is true; because, from the time the executor dies intestate, the first testator dies-intestate also, and it was executor’s own fault, that he did not, as he might, alter the property.”
In Rutland v. Rutland, 2 P. Wms. 210, the same doctrine is explicitly laid down.
In 1 Bos. & Pull. 310, Tangry v. Brown, C. J. Eyre, and the Court say, “that every thing is unadministered, which has not been reduced into actual possession, and converted by the administrator.”
3 Bac. Abr. 20, tit. “Executors,” it is said, “that an administrator de bonis non is, entitled to all the goods and personal estate, such as terms for years, household goods, &c. which remain in specie, and were not administered by the first administrator; as also, to all debts due the intestate. ”
In Wankford v. Wankford, 1 Salk. 306, C. J. Holt, after laying down the rule that the same hand having to pay and to receive, is- an extinguishment, puts this case: “ If the executrix of the obligee take the obligor to husband, that is no extinguishment; for he may pay her money, as executrix, and if he lay this money'by itself, the administrator de bonis non of her testator, (if she die intestate,) shall have that money, as well as any other goods that were the testator’s; for, (says he,) if the goods of the testator remain in specie, they shall go to the administrator de bonis non, because in that case, it is notorious, which .were the goods of the testator, and they are distinguishable; and -there- is the same reason where money is kept by itself, and the husband permits it so to be; but if the husband seizes it, it will be his, and will be a devastavit.”
Barker v. Talcot, 1 Vern. 473. If A. die intestate, and his son take out administration to him, and receive part of 8 debt being arrear to the intestate, and accepts a promissory note for the residue, and then dies intestate; this acceptance of the note is such an alteration of .the property, *57 ta vests it in the son, and therefore, on his death, it shall go to his administrator, and noi to the administrator de bonis non.”
Beaumont v. Long, Sir W Jones’s Rep. 248. "Bairon and Feme, administratrix of a former husband, recover a debt due to the intestate; the Feme dios, and the Baron sues out a sci. ftte. to which the defendant demurs. Per Curiam. The action docs not lie, because the recovery does not convert this to the proper debt of the Baron; as it would bo, if the Baron and Feme recovered a debt duo to the Feme., and then the Feme, had died; for there, by the recovery, it has become the proper debt of the Boron, if he survive; but here it remains the debt of the intestate,, and of him who shall be his administrator.”
These are a few of the many cases scattered through the Reports of the last three centuries, shewing the settled Bourse of the law. I might, bring to my aid many others, where the contest was between the representative of the administrator, and the administrator de bonis non.; and the question uniformly turned upon the point of conversion; all agreeing that a conversion extinguished the right of the administrator de bonis non, as it was an administration, and his commission reached only to the goods and credits unadministered. Sometimes equity will follow the property, where at law, there might be said to be a con - version; as, if the first administrator vested money of his Intestate, in the funds, or transferred it from one fund to another. This, as it shewed no intention of making the money his own, would not be considered, in equity, a conversion. Sometimes there will be a conversion in equity, where none exists at law; that is, where some act is done by the administrator, shewing a clear intent to convert. These differences result from the different modes of administering justice in the two systems; and do not, in the least, affect the question; for, before whichever forum the case is brought, if it be decided that the subject matter of dispute has been converted, that is regarded as decisive to *58 shew, that the administrator de bonis non has no power over it. In addition to all this, the statute of 30th Ch. 2, ch. 7, explained and perpetuated by the 4th and 5th Wma Mary, expressly declares, in its preamble, “that executors and administrators of executors and administrators, for want of privity, were not before answerable, nor could be sued, for debts due by the first testator or intestate, notwithstanding such executors or administrators had wasted the estate of the first testator;” and to remedy this evil, it makes such second executors or administrators chargeable. How ? To the administrator de bonis non? No; but chargeable “in the same manner as the first executor of administrator should or might have been;” that is, liable directly to the creditors, “ who,” (as Sergeant WiU liams, in a learned note on this statute, 1 Saund. 219, e, says,) “ may sustain an action against them, in every case, where the executor, in his life-time, was in any way guilty of any act, which amounts in law to a devastavit, such as exhausting the assets by the payment of debts of inferior degree, before those of a superior, and the like.” This review shews us, that in all contests for the property of the intestate, between the administrator de bonis non, and the representative of the first administrator, a conversion has uniformly been held to withdraw the goods from the administrator de bonis nQn: that the statutes declare the second executor or administrator not suable for the devastavit of the first; and that the statute making them thenceforward suable, does not give power to the administrator de bonis non to sue them; but gives it to the creditors.
To meet this formidable array, what is there on the other side? Not one single case; not the dictum of a single Judge; not the assertion of an elementary writer, that the administrator de- bonis non, either at law or in equity, can support an action, or file a bill for account, against the representative of a delinquent executor or administrator. This absence of authority alone; is conclusive evidence, that in England, such a right was never claimed.
*59 The law of executors and administrators cams to this colony, as thus settled, by the mother country; and we arc now to enquire, how it has been affected by our own legislation. A minute examination into our early laws, would be rather ¡natter of curiosity, than of useful application to this case; for the question here must bo governed by the revisal of 1819, which repeals every law not, reenacted by it. I will, however, take a brief notice of some of our early statutes.
The probate of wills, and granting administration, which belonged to the Ordinary in England, was given to our Courts. At first, it seems that the Court of James City (the General Court I presume) performed these functions for the whole colony. In 1645, (20th Ch. 1st; 1 Hen. Stat. at Large, 302,) there is a statute, which, stating that theretofore the estates of deceased persons had heea much wronged by the great charge and expenses which have been brought it by administrators, by pretence of their attendance at James City, &c , for remedy thereof, &c, enacts that ail administrations shall he granted at the County Courts, where the deceased resided, and all pro-bales of wills there made, &c.
The next Act which it is material to notice, is one passed in March, 1661-2, (14th Ch. 2d; 2 Hen. Stat, at Large, 91.) It is headed “Administrations, to whom to be granted,” and relates solely to that subject. The recital states, that commissions of administrations had been suddenly disposed of, under pretence of greatest creditor, or next of kin, and thereby the persons really entitled defrauded; and enacts, “that no administration shall he granted for nine months, except to the widow or child.” In cane of no wife or child, then it is enacted, “that the estate bes h;j the Court; sold at public outcry, the purchasers putting in security, and acknowledging judgments for their debts, which the Court shall assign to the several creditors,” according to their priorities; the surplusage to be boh! three years, for any who will prove himself next of *60 kin; ee and if none prove himself such within that time, the Court to give an account of the surplus, to the Assembly, to be disposed of by them for the use of the country This law clearly dispenses altogether with the appointment of an administrator, where the decedent leaves neither wife nor child. A subsequent part of this law, (it is not, as the modern practice is, laid off into sections) states, “,And whereas, it hath been the frequent evil practice of' administrators, as soon as they have obtained an order to administer, to act as administratbr, by virtue of that order, without giving security, or taking out their commissions, so that the estate being embezzled away, no account can be given thereof: Be it therefore enacted, that whoever pretends to administer upon any estate, shall bring into the Court sufficient security, before the order shall be granted; and an order thus obtained legally, by giving such security to be truly accomptable, to bring in a true inventory, and to perform sueh things as the administrators by law áre enjoined, shall not, at any time, be reversed, unless the party that obtained the same, die before he hath given an account of the estate, and obtained his quietus; in which case, the Court is empowered to grant the administration of the estate so not accompted for to some other person, who may by virtue thereof call the heirs, executors or administrators of the former administrator to an account, who shall pay out of the said deceased administrator’s estate all such debts as shall be found due to the estate he administered upon, in the first place.”
I have given this statute nearly entire, that we may the better judge of it. It contains a.striking departure from the established law; for it will be recollected,-that it was passed eight years before the Statute of Distributions; and a much longer time before the Statutes of Charles and William Mary, subjecting executors and administrators to the suits of creditors. It does not touch the case of executors, but goes to a radical change of the existing law of *61 administrators. Thai law granted to the administrator de bonis non, a partial administration oí the goods and credits unadmin.iste.rsd. This seems to contemplate a full administration; for it is, that if the parly die before he hath given an account of the estate, the former order of administration shall be reversed, and administration shall be granted of “the estate,” (the whole estate,) “so not accounted for.” The administrator, then, is not an administrator da bonis non administratis, but of the whole estate; and the Act is careful to vest in him the power “by virtue thereof,” to call the heirs, executors or administrators of the former administrator to account. As he was made administrator of the whole estate, it was certainly proper that he should have power over the whole; but it could not have been necessary for the law to give him power to call the representative of his predecessor to account, by virtue thereof, if such power existed independent of the law. This provision, then, is clear proof that the Legislature who passed the law, understood that a second administrator could not, as the law then stood, call the representative of a former administrator to account. It is very clear to me, that if this Act of 1661-2 were in force when the case before us arose, it. governed it, and gave the right to bring the bill; but it is equally clear to my understanding, that the Act was not then in force. In 1705, (4th Anne, 3 Hen. Stat. at Large, 371,) we have an Act, “ For distribution of intestates9 estates, ike.,” which is nearly a copy (so far as I have been .able to corn-pan; them,) of the 22d and 23d of Charles 2. This Act unquestionably repealed so much of the Act of 1661, as disposed of the estates of intestates, where there was no wife or child, by making, in such eases, a different disposition of the estate.
In 1711, (9th Anne, 4 Hen. Stat. at Large, 12,) wo find “ an Act directing the man tier of granting probates of wills and administration of intestates’ estates.” This Act teats these subjects yery much at large, and with *62 much more legal science than the former. It not only goes into the details, so necessary to clearness, but prescribes the forms of the bonds to be given in all cases. When it comes to speak on the subject of unfinished administrations, it says, “And if it shall so happen, that any executor shall die intestate, not having fully performed his executorship; or any administrator shall depart this life, not' having fully administered the goods of his intestate; in every such case, it shall and may be lawful for the Court, that granted the certificate for obtaining such probate or commission of administration, to hear and determine the right of administration, and to grant certificate for obtain» ing letters of administration, of the goods not administered, to such person as by this Act shall have right thereto.”
Now, I say, that this Act repealed the statute of 1661. The provisions of the two Acts are inconsistent with each other. The first, in case the party dies before he obtains his quietus, reverses the former order of administration, and grants de novo complete administration of the whole estate; the second, where the administrator dies, not having fully administered, grants administration “ of the goods not administered” only. The former gives the second administrator power to call the heirs, executors or administrators of the first, to account; and this was necessary; for, as he had to account for all the estate, he ought to have the power to call it all in. The latter law gives no power to the second administrator to call the representative of the first to account; and for this there was no need, as he had to do only with the goods unadminisiered. When the Legislature used these words, their meaning had been perfectly fixed and settled; and we are bound to suppose that they used them in the sense which such a numerous train of decisions had affixed to them. This law, then, would repeal the former, upon the ground that leges posteriores, priores contrarias abrogant. But it has also a repealing clause, most strongly and emphatically expressed; that *63 all and every other Act and Acte, and every clause and article thereof, heretofore made, for so much thereof as relates to any matter or thing whatsoever, within the purview of this Act, is and are hereby repealed and made void, to all intents and purposes, as if the same had never been made.” I conclude, then, that this Act repealed the former.*
The repeal of the Act of 1661-2, restored things to the standing here, which, I have shewn, existed before its passage. That this was the Legislative understanding of the matter in 1730, is most clear from an Act then passed, in which they say, “ Whereas executors and administrators of such persons as possess themselves of personal estates of other dead persons, and convert the same to their own use, are not liable, by the rules of the common law, as it now stands in this colony, to pay the debts of such persons, whose estates have been so converted by their testator or intestate; for remedy whereof; Be it enacted, that all executors and administrators of any executor in his own wrong, and all executors or administrators of any executor or administrator of right, who shall waste or convert to his own use, goods, &c. of his testator or intestate, shall, from henceforth, be liable and chargeable, in the same maimer as his testator or intestate should' or might have *64 been." Here we see the mischief clearly expressed, and the remedy as plainly applied; a mischief, which could not have existed, and a remedy worse than useless, because tending to create confusion, if the statute of 1661-2'had been in force.
Several other Acts were mentioned in the argument, those of 1785 and 1814, particularly; but really it seems so clear to me that they were intended to meet the particular mischief stated in them, and have no influence on the question before us, that I do not think it worth while to add to this opinion, (already too long,) by a further notice of them.
It will be observed, that I have not compared the conveniences and inconveniences of the two constructions contended for. In doubtful questions, this may be very well; but where the law is clear; (as it seems to me in this case,) the Court have nothing to do (I think) with these considerations. That the law is so, is enough for us. If it be inconvenient, or operate injustice, the Legislature must interfere.
I shall only add, that in the revisal of 1819, 1 R. C. 390, sec. 66, the law as stated above, taken from the Act of 1730, is re-enacted, whereby the. administrator of an administrator who has wasted the assets, is made liable and chargeable, in the same manner as his intestate was; in other words, liable to the creditors, and not to the administrator de bonis non.
I am therefore of opinion, that the administrator de bonis non cannot maintain a bill in equity, calling the administrator of the administrator to account, for any waste or conversion of his intestate.
Judge GkeeN.
It was determined in Dykes v. Woodhouse, 3 Rand. 287, that an administrator de bonis non, was entitled to a scire facias to revive a judgment in favour of a deceased exe? *65 autor or administrator, for a debt due to the testator or intestate: because such judgment did not, as was admitted in the English Courts, convert the property of the debt, or amount to an administration. The administrator de. bo?m non is bound by, and entitled to, the benefit of such judgment; and for the same reason, he is entitled to appeal, or to prosecute an appeal from any decree or judgment, against the former executor or administra tor, or administrator de bonis non, binding or affecting any subject belonging to the testator or intestate; the right to which, but for such decree or judgment, would have devolved on the administrator da bonis non. The party aggrieved, or any one standing, by operation of law, in his place, is entitled to prosecute such appeal.
The original plaintiff in the Court below, could not, in his character of administrator dc. bonis non of Wernich (in which character only he sued,) reach the fund in the hands of M’ Mur do, unless he was entitle!?, in that character, to call the representative of the former administrator to account, and to bo substituted to the rights of Wernickes creditors and distributees, and of the sureties of the first administrator, in respect to the fund deposited with Douglas, by the, first administrator, for the indemnity of his sureties.
The question, whether an administrator de bonis mm can call the representative of a deceased executor or administrator to account in a Court of Equity, for the assets of the testator or Intestate, wasted or converted to his own, use by such executor or administrator, deserves a full examination; since it has never yet, as far as I am informed, occurred in this Court, except in the case of Spotswood v. Dandridge, decidua in a Special Court; and in that case, the question does not appear to have been discussed, but to have passed sub silenlio.
At the common law, an administrator was the mere bailiff of the ordinary, responsible only to him. The next of hin had no legal or cqnUable claim to distribution: but *66 the ordinary distributed the assets in pios usus, at his pleasure. 11 Vin. Abr. 52, pl. 1, n.; Palmer v. Alcock, 3 Mad. 56; Skinner, 219, S. C. It has been even doubted, whether the ordinary was responsible to creditors; a doubt removed by the statute of Westm. 2, which required the ordinary to pay the debts. 18 H. 6, 23, b; 5 Rep. 83, Snelling’s Case. Nor could the ordinary or administrator sue for the debts due to the intestate. 8 Rep. 135. Sir John Needham’s Case. The statute of 31st Edw. 3, ch. 11, made it the duty of the ordinary to commit the administration to the next and most loyal friends of the intestate, who might sue for the debts due to the intestate, and be answerable as executor. 11 Vin. Abr. 91, pl. 1; and the statute of 21 H. 8, ch. 5, sect. 3, directed that in case of intestacy, or the executor’s refusing, administration should be committed to the widow or next of kin, or both, at the discretion of the ordinary; and if divers persons were in equality of kindred, he might accept one or more. Ibid, pl. 2. These statutes deprived the ordinary of the power of displacing administrators at pleasure, which he had at the common law. 11 Vin. Abr. 52, pl. 1, n; 70. pl. 7; 115, pl. 15. But, he still took bonds from the administrators, and compelled them to make distribution at his pleasure, Sadler v. Daniel, 10 Mod. 21; until about the 12th of James 1st, when if was determined upon the construction of the statute of H. 8, that an administrator was not bound to make any distribution of the surplus, even although the intestate had- children under age, or beyond sea, and administration was granted to a stranger; and prohibitions issued to prevent the ordinary from compelling-such distribution. 11 Vin. Abr. 52, pl. 1, n; 183, pl. 1; 357, pl. 2; Hughes v. Hughes, Lev. 233. Before the Statute of Distributions of the 22d and 23d of Charles 2, (1670,) an executor was not compellable in. any case, to make distribution of any surplus of the assets remaining after the payment of debts and legacies; so that an executor and administrator had precisely the same in *67 ierpst in the testator’s goods; not an absolute interest, as they held in autre droit, but such an interest as that no other except creditors, in case of intestacy, or creditors and legatees, in case of a will and executor, could claim any thing against them, in respect to the assets of the testator or intestate, which came to their hands. The nature of this interest was such, that although the executor or administrator was entitled to the goods, chattels and credits of the testator or intestate, so that no one, (except creditors and legatees as aforesaid.) could claim against them during their lives; yet, upon their deaths, testate or intestate, all the testator’s or intestate’s goods, chattels and credits, remaining in kind, still belong to the estate of the testator or intestate; that is, (in the language of the letters testamentary, or commission of administration,) they were “the goods, chattels and «edits of the testator or intestate at the time of his death.” Neither the executor or administrator could dispose of such by his will. 11 Vin. Abr. 109, pl. 3; 421, pl 6; 267, pl. 6. They remained, as at the death of the testator or intestate, without a proprietor, and it devolved on the ordinary to give them an owner, by appointing an administrator de bonis non administratis” by the former executor or administrator, or by granting probate of the will of the first executor to his executor; the effect of which was, to make the second executor the immediate executor of the first testator, as if he was appointed executor by fits will. 11 Vin. Abr. 421, pl. 6; 267, pl. 6. But, the executor or administrator had the power, and if it did not injure creditors or legatees, the right also to make the goods, chattels and credits of the testator or intestate, their own, by converting them to their own use, by destroying their identity and changing their character; and whatever was so converted, no longer remained any part of “ the goods, chattels and credits, which were of the testator or intestate, at the time of his death.”
In this state of things, it was necessary, and within the original reason of granting administrations, to grant an ad *68 ministration of the goods and chattels remaining in kind. But, there was no reason to grant to another a power to call upon the executor or administrator of the deceased executor or administrator, for an account and payment of any balance of the assets converted to his own use. The payment of legacies was compelled in the Ecclesiastical Court exclusively, (11 Vin. Abr. 358, pl. 7, note;) until Lord Nottingham first assumed the jurisdiction in Chancery, upon the ground that the executor was a trustee for the legatees; and before the Statute of Distributions, and whilst the ordinary exercised the power to compel distribution at his pleasure, that jurisdiction was also exercised exclusively in the Ecclesiastical Courts. Toll. Law of Executors, 489. But, creditors never had remedy in the Ecclesiastical Court, and only had it in Courts of common law. As to creditors, after the death of an executor or administrator, they had no remedy against his representative for a devastavit, at common law, it being a tort, which died with the person. 11 Vin. Abr. 309, pl. 1; 310, pl. 7, 8. Nor were they ever held to have a remedy in Chancery, úntil three years before the statute of 30 Ch. 2, chap. 7, sec. 2, (which gave a remedy at law against the executor or administrator of an executor de son tort;) when it w'as said that such a remedy might be had against such an executor in equity; and two years after, and one year before the statute, it was held that the same remedy might be had in equity against an executor of a rightful executor. 11 Vin. Abr. 310, pl. 9; pl. 3, sec. 6; pl. 10. The bond given by the administrator could be used against the executor or administrator, only for the purposes of enforcing that which was within the proper jurisdiction of the ordinary to enforce, the returning of an account, and a distribution at his pleasure; not to enforce the payment of debts, as was afterwards determined, when the Courts of law adjudged that the bond was void, so far as it bound the administrator to distribute, but good, so far as it bound him to render an account; the latter subject *69 being within, and tho former without, the jurisdiction of the Ecclesiastical Court. 11 Vin. Abr. 183, pl. 1; 358, pl. 7, noie. It was therefore more convenient, (as no one was interested in tho recovery to bo had against the exeeulor or administrator of the administrator, but those designated by the ordinary as distributees,) that the remedy should be had immediately for their benefit, and in their names, and paid to them at once, than that it should go into the hands of tho succeeding administrator (although he might ho one of tho designated distributees) to bo afterwards distributed, perhaps after a suit against him. But after it was determined, that the ordinary had no power to compel any distribution, it would have been ah-surd to hold that the executor of a deceased administrator was liable to account to the administrator de, bonis non for the assets converted by the first administrator; for, then ¿he fund would have devolved from administrator de bonis non to administrator de bonis non forever, and could have linen of no use to any one. So, in respect to executors dying intestate, creditors bad no remedy in respect to the assets converted to bis own use or wasted; and the ordinary never had power to compel any distribution whatever, in the case of an executor. Such effect had the appointment of an executor, that before the statute of 21 Hen. S, (which directed administration to be committed to the wife or the next of kin in case of intestacy,) that if an executor died intestate, the ordinary might, and ought to commit tho administration de bonis non of the executor and of the first testator, to the same person. Br. Abr. “Administrator,” pl. 45, cites 32 H. 6; 2 Lib. Int. 145; 21 Edw. 4, 24; 11 Vin. Abr. 88, pl. 1. The statute of 31 Edw. 3, having directed the administration to he committed to the next and most loyal friend, the. executor was considered as designated by the testator as such; and the unadministered assets should therefore go quasi his, to the next and most loyal friend of the executor. This doctrine was held as late as the 30th Char. 2, 11 Vin. *70 Abr. 90, 11. But it was otherwise held, both before and after this last ease, and particularly after the Statute of Distributions, and that administration de bonis non should be granted to the next of kin of the testator, under the Act of 21 H. 8, the testator being dead intestate as to all the assets not administered by the executor; that is, not converted. 11 Vin. Abr. 89, pl. 8; 87, pl. 23, (1721;) 111, pl. 20, 21, (1723, 1725;) 11 Vin. Abr. 88, pl. 1. The same doctrine, founded upon the Act of 21 H. 8, was suggested by Brooke, in his abridgement.
It was for these reasons, that no rights were given to the administrator de bonis non against the former executor or administrator, and his commission was so framed as to shew accurately the extent of his rights, by committing to him the administration de bonis non administratis by the former executor or administrator; which entitled him to no more than the goods, chattels and credits, remaining in specie, or although changed, yet capable of being identified as the proceeds of the goods, chattels or credits of the testator or intestate, not intended to be converted by the executor or administrator; as money collected and kept separate by the executor or administrator; lands extended in a suit by the executor or administrator, in satisfaction of a debt duelo the testator. 3 Bac. Abr. 19, 20; Wankford v. Wankford, 1 Salk. 306; 11 Vin. Abr. 108, pl. 2; 112, pl. 4. In equity, money might be recovered by the administrator of an executor, upon a judgment recovered by the executor for goods of the testator taken from the executor; Yate v. Gough, Yelv. 33; or if the executor should, for the benefit of the estate, invest part of it in the funds, or transfer it from one particular stock to another, this was not a conversion or appropriation, but it might still be followed as assets, for the nature of the case required it Waite v. Whorewood, 2 Atk. 159. In these cases, the fund can be identified, like money kept separate; and there was no intention on the part of the executor, to convert it to his own use, and therefore the fund in these cases, as ia *71 die case of a judgment unsatisfied, in favor of an executor, fur a debt, originally duo to the testator, remains assets of the testator not administered by the executor.
After the determination that an administrator could not he compelled to make distribution, the rights of an executor and administrator were precisely the same. JS'either was accountable for assets wasted or converted to his own use, except to creditors, and (in the case of a will) to legatees, in their life time; and to legatees only, after their deaths. Their representatives had no interest in the assets unadministered; but, these went to the administrator de bonis non, or the executor of the executor, who held them as the assets of the testator or intestate, chargeable, in respect, to such assets, as the executor or administrator was chargeable whilst, he held them, and no further. Upon their deaths, the same consequences followed, as upon the deaths of the executor or administrator, and no other.
It was argued, that after the Statute of Distributions, tho administrator, in all cases, and the executor, in some cases, being compellable to make distribution of the surplus of the assets which came to their hands to be administered-, and as their representatives were exempted from responsibility to the administrator de bonis non for goods converted by the executor or administrator, in the life-time of tho executor or administrator, in respect to the beneficial power over the assets, which the executor and administrator had-before that statute: and as, since the statute, the. representative of the executor or administrator is responsible, for the goods so converted, to some one; that responsibility should be to the administrator de bonis non, as trustee for tho distributees: and that the reason of the former rule having failed, the rule also failed.
Before the Statute of Distributions, and whilst the ordinary compelled distribution, the same reason existed for holding the representative of a deceased administrator liable to the administrator de, bonis noth for the goods com *72 verted, as exists since the statute; yet such liability never existed, and would not have been convenient to any pur pose, for the reasons before stated. The. administrator de boms non, after the statute, was a trustee for distributees, and a representative of the testator or intestate, only to the extent of the goods, chattels and credits, unadministered. Such was the effect of the commission to the administrator de bonis non, both before and after the statute. No alteration was made in the form of the commission, in consequence of the statute; nor was the statute ever held, in England, to have varied or enlarged the rights of the administrator de bonis non. No case has ever occurred in England, in which an administrator de bonis non has ever asserted a claim against the representative of a deceased executor or administrator, at law or in equity, for an account of the assets wasted or converted to his own use, by the executor or administrator; and consequently, no adjudged case is to be found expressly denying or affirming the propriety of such a claim. Nor do I find any direct dictvm to the point, one way or the other. This is only to be accounted for, by the supposition that it never occurred to any one then, that there was any foundation in law or equity, for such a claim; otherwise, cases must have occurred, in which it would have been necessary to decide that point; and, if such a right existed, it is impossible that there should not be found many instances of its having been asserted, in the reports of the decisions of the English Courts. The various questions which must have arisen in the prosecution of such claims, could not have escaped the attention of all the reporters and elementary writers. There is, however, abundant evidence in the adjudged cases, found in the English boohs, to shew that no such right existed, either before or after the Statute of Distributions,
I have already noticed the cases at law and in equity, in which the question has been between the executor or administrator of an executor or administrator, and the administrator de bonis non, as to their respective rights to. particular *73 subjects; many of which were subsequent to the Statute of Distributions, and in which the right of the administrator de bonis non to the particular subject, has been sustained, upon the ground that it was not converted, nor the property altered, or if altered at law, not altered in the coirtemplalion of a Court of Equity; because the executor or administrator did not intend, by such alteration, to convert it to his own use. Other cases have occurred, where the same question has arisen in the Courts of Law and Equity, and has been determined in favour of the representative of the deceased executor or administrator, upon the ground that the subject of controversy had been administered or converted, and the property changed at law; and even when not changed at law, yet altered in the contemplation of a Court of Equity, by the act of the executor or administrator, with intent to convert it. Thus, an administrator, possessed of a term of his intestate, makes a lease for years of a part of it, reserving a rent, and makes his executor and dies; the executor of the administrator is entitled to the rent, and not the administrator de bonis non of the intestate. Dunn v. Baylie, Freeman’s Rep. 392; Vent. 295; 2 Lev. 100; Noel v. Robinson, Vern. 94. The cases in equity of Butler v. Baker, Ch. Cas. 224, (1673,) and an anonymous case in 2 Vent. 362, (1683,) strongly illustrate these doctrines. The first of those cases was thus: Administrator mortgages a term of the intestate’s and makes ¿2. his executor, and dies. B. takes administration de bonis non of the first intestate, and claims the residuary interest and trust in the term, and prays redemption. But, redemption was decreed to J2. the executor of the first administrator; who had aliened the whole estate in law, of the term, and was not possessed in autre droit, nor of any part of the interest thereof, but in his own right; and so it shall go to his executor, and not to B. the administrator de bonis non.”
The other case was thus: Administrator of the conusee of a statute, had agreed with the conusor to assign, in con *74 sideration of a sum of money, which, upon agreement, the conusor had covenanted to pay to him, his executors or administrators. Administrator died. Decreed the money to be paid to the executor of the administrator, and not to the administrator de bonis non; although, before the extent, it could not be assigned at laiv, no debts of the first intestate appearing.
These cases were after the Statute of Distributions. In the last ease, the legal title to the statute belonged to the administrator de bonis non; and if debts of the first intestate had appeared, it is intimated that the equitable title of the executor of the administrator would not have prevailed against this legal title. Yet, the subject was liable to be brought into distribution, with any assets converted by the administrator.
If the representative of a deceased executor or administrator was liable to the administrator de bonis non, for the assets converted, upon what principle could the equity of redemption, in the first case, be decreed to the executor of the administrator? That he might receive the money, merely to account for it to the administrator de bonis non, a party in the very cause in which that decree Was made ? And upon .what principle could the equitable right of the executor of the administrator, in the last case,- prevail, against the legal title of the administrator dé bonis non, if the money paid to the first was to be accounted for to the last ?
It was suggested in the argument, that the first administrator may have been a creditor of the intestate, and therefore entitled to the fund to satisfy his claim. If so, he must have asserted that ground of claim, or the Court could not have presumed it; or if, on the other hand, he was a debtor to the estate, that fact would have been alleged to support the claim of the administrator de bonis non. But, no enquiry was made as to the fact, whether the deceased executor or administrator was a creditor or debtor of the estate, in any case; a proof, I think, that the fact had no influence, in any way, upon the rights of the parties.
*75 Again: If an administrator de bonis non had such a right as is now claimed, upon the best settled principles of a Court of Equity, legatees and distributees could not pro-coed in equity against the executor or administrator of a deceased executor or administrator, without making the administrator de bonis non a party; for, if he had the right claimed, he would be entitled to the assets converted, for the payment of debts, before the legatees and distributees could be entitled to auy thing. In that case, if there was ?io administrator de bonis non, the Court should not proceed in the suit, until one was appointed, and was brought before the Court. As, in the case of an executor de son tort, it is said, “ There is no precedent in a Court of Equity of a decree against him, without setting up an administrator; for, if there should be an administrator, and the defendant pay the money, he would be again liable to the administrator.” Edlows v. Deane, Bunb. 36. Yet, in the numerous cases cited in the argument, in which the legatees and distributees prosecuted suits against the representatives of deceased executors or administrators, for the assets converted, the administrator de bonis non was not a, party, nor was the necessity that he should be a party suggested. 11 Vin. Abr. 420, pl. 4; 427, pl. 11; 423, pl. 18; Orr v. Mann, 2 Ves. 194. The rule is accurately laid down by Lord Chancellor King, in Swann v. Hooker, 2 Wms. Rep. 340, (1725.) “ If an executor dies intestate? all the personal estate, the property whereof is not altered, shall go to the administrator de bonis non, and not to the next of kin of the executor; and this is true; for, from the time the executor dies intestate, the first testator dies intestate also; and it was the executor’s own fault, that he did not, as he might, alter the property
There are other considerations, arising out of well settled principles of law, which lead irresistibly to the conclusion that an administrator de bonis non had not a right in equity, either before or after the Statute of Distributions, to claim satisfaction from the representative of an *76 executor or administrator, for assets wasted or converted to his use. Creditors, at common law, had no action against the .executor or administrator- of an executor or administrator, who had wasted or converted the assets to his own use? and in equity, a remedy was not allowed in such cases, • until after the Statute of Distributions, and a little before the English Statutes gave a remedy in that case, at law. ■Now, such a remedy at law or in equity, would have been utterly superfluous, and the want of it could never have been felt, if the -represéntative of a- deceased executor or administrator was accountable to the administrator de bonis non, for the assets wasted or converted. The fund would háve passed into his hands; and then, as assets-in .his hands to bé administered, would have been liable to creditors'. If he failed to coerce the payment, it would be a devastavit, like the*failure to collect any other debt, and he would be liable for the amount to creditors, as if it had been actually received.
It has been seen, -that an executor of an executor has precisely the same rights in respect to the assets of the first testator, which an administrator de bonis non has? that is,-to all the goods, chattels and credits, not administered by the first executor; and an executor or administrator, who, represents both the debtor and creditor, may retain the assets, which he has as executor or administrator of the debtor, for the satisfaction of the debt. due to him, as executor or administrator of the creditor. 11 Vin. Abr. 261, pl. 3; Burdett v. Pin, 2 Brownl. 50. If then, the administrator de bonis non, who was also executor or administrator of the deceased executor or administrator, or the executor of an executor, were entitled to claim against the estate of the first executor or administrator, for the assets of the first testator"or intestate, converted to their use or wasted, it would be their duty to retain out of-the assets of , the. executor or administrator in their hands, the whole amount due to them for süch conversion-or waste, as administrator de bonis, non or executor of the first testator *77 or intestate; and the claim would be extinguished by operation of law, the instant the right and obligation concurred in the same persons. In such case, there never could have been any necessity for a Court of Equity to give relief to creditors against the representative of a deceased executor or administrator, upon the ground that they had no remedy at law; nor any occasion for the statute which gave them a remedy at law. It would have been absurd to allow to legatees and distributees a remedy in equity, against the representatives of the deceased executor; for, the debt of the deceased executor would be in the hands of the executor of the executor, as executor of the first tes íaíor, liable io creditors and legatees, and that before any suit could possibly be brought.
Again: An executor, before the Statute of Distributions, was entitled to the surplus of the assets, after the payment of debts and legacies, and since the statute, unless from the terms of the will it appears that the testator intended to exclude him from the surplus; and then he is a trustee for the next of kin. 11 Vin. Abr. 408, pl. 6, and note. He was not entitled as legatee, but as executor; so that the assets unadministered went to his executor, as immediate executor of the first testator, with precisely the same rights which the first exeeulor had. The executor could not devise the assets unadministered; and if the executor died intestate, then was the testator intestate as to the assets not converted by the executor, and they went to the next of kin of (he testator, and not of the executor. 11 Vin. Abr. 111, pl. 19-20. Thus, the right of the executor to the surplus, was virtually limited to the surplus of the assets, the property of which had been altered by his act in his lifetime. If the estate of the first executor was responsible io the executor of the executor, as executor of the testator, for the assets so converted, this right to the surplus would be. utterly frustrated, not only as to the first executor, but; every succeeding executor ad infinitum; and after the •payment of the, debts and legacies of the testator, the resi *78 due of the assets of the testator would be transmitted ad infinitum from executor to executor, each succeeding as to such assets as the executor of the testator, and the fund would never be liable for any debts of the intermediate executors. If a creditor sued the executor of the executor for the debt of the executor, the executor of the executor would say, “ my testator, the executor, was indebted for goods wasted and converted, to me as executor of the first testator, in a large sum which I have retained out of the assets of my immediate testator, and no more came to my hands, than was sufficient to pay that debt;” and so every succeeding executor ad infinitum. The right of an executor tq the surplus, stands, in Virginia, precisely on the same footing that it does in England. This was' certainly the case, until January 1, 1787, as was decided in Shelton v. Shelton, 1 Wash. 53, in this Court. In that case, a doubt is thrown out, whether, since the time when the act of 1785 took effect, the executor is not, by that act, deprived in all cases of the surplus. That act provides that “when any person shall die intestate as to his goods and chattels, or any part thereof, the surplus shall be distributed.” The expression, or any part thereof, was adverted to in Shelton v. Shelton, as referring to all that was not actually bequeathed. I cannot think that the expression had that import. A testator might die testate as to part, and intestate as to other part of his estate. 11 Vin. Abr. 79, pl. 3. As, if he appointed an executor of all his goods in Virginia, leaving goods in Maryland, he would be intestate as to all the goods in Maryland; or, was to appoint an executor of a specified part of his goods, saying nothing of the residue, he would die intestate as to the residue; or, if his general executor died without administering or converting all his goods and chattels, the testator would be intestate as to all unadministered or unconverted, according to the cases before referred to. But, whenever a general executor was appointed, the testator was not intestate as to any part of his estate, unless the executor died without converting the *79 whole; in which case, he would be intestate as to the pari not converted, and it was to these eases of partial intestacy that the expression of the statute referred. All statutes should be construed, with reference to the principles of the common law; and the expression, “ if intestate as to a part of the estate,” means intestate according to the signification of that term as used in the common law. It was not intended by the statute, to give it an entirely new signification.
If the administrator de bonis non had the right now contended for, the statutes giving a remedy to creditors against the representatives of the deceased executor or administrator, for the waste or conversion of the assets, would not only have been useless for the reasons before stated, but the remedies of the creditors and of the administrator de, bonis non, in relation to the same subject, would have been inconsistent in their effects. As respects the assets of such executor or administrator, the claim of all creditors (no matter what was their original dignity, in respect to the assets of the testator or intestate) were of equal dignity, and all ranked as simple contract debts only; and the first judgment was to be first satisfied. But, if the fund was to go into the hands of the administrator de bonis non, then the claims of creditors would rank upon the fund according to the original dignity of the debts. As against the executor or administrator of the executor or administrator, a simple contract creditor might gat, by greater diligence, a preference over a bond creditor; which could not be done, as against the administrator de bonis non. If the administrator de bonis non had a right to claim the fund, the Legislature surely would not give to creditors a concurrent right to claim the samo fund; the effect, of which would bo so totally different as to the ultimate rights of the different creditors; and that too, without any necessity.
It was argued that the Statutes of 30th Ch. 2, and 4th and 5th of Will. Mary, did not give a remedy against a» executor or administrator of an executor or adminis *80 trator, who had wasted or converted the assets, to any creditor, but such as haft obtained a judgment against the executor or administrator in his life-time; and that, therefore, in order to provide for creditors, who had not obtained judgment in the life-time of the executor or administrator, the fund should go into the hands of the administrator de bonis non, so that the creditors who had not obtained judgments might be satisfied. If this proposition were true,-there was the same necessity before as since the statutes, to give the fund to the administrator de bonis non; arid if that had been the law, the statute would have been unnecessary. But it seems to me, that the statute gives a right to all creditors, whether they had obtained judgments against the executor or administrator in his lifé-time or'not, to sue the representative of the executor or administrator, and to.allege in his declaration, the existence of the debt, that assets sufficient to pay it had come to the hands of the executor or administrator, and that he had wasted or converted them. This construction is necessary to give effect to the statutes. The declaration that the executor or administrator was liable, relates to the substance of the liability, and not to the mode of enforcing it. In an original suit against an executor or administrator, á devastavit cannot be put in issue, nor any thing, but whether th'edebt be-due, and whether assets sufficient to satisfy it, in a due course of administration, have come to the' hands of the executor or administrator. 11 Vin. Abr. 312, pl. 7. If the devastavit could be enquired of, then a personal judgment would' be the consequence, whilst it might happen, that although the executor had committed a devastavit by paying debts of an inferior dignity, or by releasing a debt improperly, or by converting the goods to his own use; yet, there might be assets sufficient remaining to satisfy the creditor, upon execution; in which case, none of those things would be an injury or devastavit, as to that creditor. It only becomes an injury to him, when, by a return of nulla bona, it appears that such acts had prevented the *81 recovery of his debt. It would, therefore, be premature io enquire into a devastavit, before it appeared that such devastavit had injured the creditor. But, after the death of the executor or administrator, none of the assets of the testator or intestate, can remain in the hands of his representative, answerable to the claim of the creditor; and in a suit against such representative, an enquiry into the devastavit becomes pertinent and proper; for that is the only foundation of tho plaintiff’s claim. The gist of the action by a creditor of the testator, against the executor for a devastavit, is not the debt of the testator, but tho tort of the executor in wasting the assets, which ought to have been applied to the payment of the debt. The action is therefore against tho executor in the debet and detinet, for tho recovery of compensation against him individually, for his tort; and the debt of tho testator, ascertained by the judgment against the executor, is introduced collaterally, as an inducement to tho action, and as furnishing the measure of compensation. Wheatley v. Lanc, 1 Saund. 216. So the gist of an action against the administrator of an executor, for the devastavit of the executor, would be the personal wrong of the executor, which, by the common law, died with the person, but for which the administrator of the executor is responsible, in his character of administrator, by tho statute. The action is not for the recovery of the debt eo nomine, as the debt of the testator, but for compensa! ion for the injury done by the executor; and the debt is matter of inducement, and the measure of the recovery. It is not, at all uncommon, that the question whether a debt, and to what, amount, is due to the plaintiff by a stranger to the defendant, is necessarily put in issue; as in the case of an escape, the creditor, in a suit against the sheriff, may recover the amount of the debt which ho can prove to be due i.o him from the prisoner who escaped; and if he cannot prove that any debt was due, he con recover nothing. Alexander v. M'Cauley, 4 Term Rep. 611; Ravenscroft v. Eyles, 2 Wils. 291; 4 Vin. Sup, 96, pl, 2, And if an *82 attorney or agent were sued for failing to collect a debt, he would not be liable to any recovery, unless it were proved that the debt was due. It is a maxim of law, that there is no right without a remedy; and especially, when a statute gives a right, and does not prescribe the remedy, the Courts are bound to devise the proper remedy, which, in general, is an action on the case founded on the statute. To give effect to this maxim, general rules of law, introduced for the sake of convenience; yield to cases of necessity, in which injustice would be done by adhering to the general rule. Thus, in an action of trespass qxiare clausum fregit, as a general rule the plaintiff can only recover damages for 1he first entry and eviction, and not for the detention of the possession, unless he has regained the possession by entry or action. But, if the estate of the plaintiff is expired, so that he eánnot regain the possession, he may recover the profits accrued from the time of eviction till his title expired, without regaining the possession, notwithstanding the general rule. The rule that an executor could not be sued for a devastavit, until there was a judgment for the debt against him as executor, was a rule of convenience, and to avoid mischiefs which would arise, when the suit for a devastavit was against him, and which do not exist in the ease of a suit against his executor and administrator. If, however, there was any inconvenience in allowing a suit for the devastavit of the executor against his representative, without a previous judgment for the debt against the executor, that must be submitted, to, rather than that the right given by the statute should be unavailing. But, I can see no inconvenience in this remedy, although the fact that no debt was due, or that the executor had not wasted, or that the administrator of the executor has no assets of his testator, would each have been a complete defence for the representative of the executor, and before the statutes allowing double pleading, he could only put his defence on one of those points. This was an inconvenience common to all cases, in which a party might *83 have several good pleas, but was confined to one; as, an executor, although a plea that no debt was due, or that he had no assets, would have been a bar to the action, could plead bul one of those pleas. The statute allowing double pleading has remedied this inconvenience; and the representative of an administrator, sued for his intestate’s devastavit, may plead that no debt was due, and that his intestate did not waste or convert the assets, and that he has no assets of his intestate. Although I have found no case of an action against the administrator of an executor for the devastavit of the executor, without a previous judgment against the executor, yet such suits have been common against executors of executors. The opinion which I have suggested on this point, is supported by that of Sergeant Williams, 1 Saund. 219, e; and by the doctrine of the Court in 4 Vin. Supp. 196, pl, 2, Rivett v. Jeffries, &c.
If I am wrong in this opinion, then the creditor, who would have no remedy at law under the statute, would be remitted to his remedy in equity, as before the statute, against the executor or administrator of the executor or administrator; and it would not follow, that the administrator de bonis non was entitled to any remedy.
It is, however, argued, that a creditor who has not obtained a judgment against the executor or administrator, establishing his demand, cannot, on general principles of law, maintain an action for that purpose, against any hut the proper representative of the testator or intestate, because no other can have the means of ascertaining whether the demand be proper or not. But the cases are quite common, in which such suits may he maintained against one not representing the testator or intestate, as against an executor de son tort; and when a wrongful administration has been revoked, a creditor may sue the displaced administrator, and he can only defend himself by shewing that he has legally administered all the assets, except those delivered over to the succeeding administrator or executors and if any remain in his hands, not so delivered over, or, *84 if he has committed a devastavit, by paying debts of inferior, before those of superior dignity, the creditor will recover. 6 Rep. 18, b, Packman’s Case; 11 Vin. Abr 119, Pl. 5.
The cases of temporary administrators, who are responsible to the executor or administrator who succeeds them, have been relied upon; and it is said, that for the same reason that they are responsible to their successors, the representative of a deceased executor or administrator should be responsible to the administrator de bonis non. But the cases are wholly different. The commission of the latter gives him only the goods not administered; whilst in cases of an infant executor or administrator, or where one entitled to administration, or as executor, is absent, or is obstructed by a pending suit; whenever the impediment is removed, a general probate or administration is granted to him for the whole estate, and the administration is granted in the mean time to the administrator durante minoritate0 or durante absentia, or pendente, lite, for the use of the executor or administrator, to whom a general probate or administration may be afterwards committed. They are only the bailiffs of such general executor or administrator, and therefore responsible to them. So, if administration is granted to an improper person, or by an improper Court, and afterwards revoked, the administrator to whom administration is afterwards properly granted, has, in such cases, a general commission of administration, and is thereby entitled to call the displaced administrator to account. 11 Vin. Abr. 117, pl. 4. The latter is, indeed, as to the former, an executor de son tort.
I am satisfied upon the whole, that in England an administrator de bonis non never had any such right as is claimed for him in this suit; and our law is to the same effect unless changed by statute.
The Act of 1661-2, chap. 45, provides that if an administrator die before he hath given an account of the estate and obtained his quietus, the Court should have power to *85 ¿rant tho administration of the estate not so accounted for, to some other person, who may, by virtue thereof, call the heirs, executors or administrators of the former administrator to an account, who shall pay out of tho deceased adminiatrator’s estate all such debts as shall be found duo to the estate he administered upon, in the first placo. This .statute also directed distribution to the wife and children, and only applied io the case of a deceased administrator not having accounted; and in that single case, authorised a commission to the succeeding administrator, for the estate ■not accounted for, and to call for an account; instead of an administration de bonis non, which gave no right to an account of the goods wasted and converted; and the only object, of that, provision in the law, was, to enlarge the rights of the succeeding administrator, in that single case only, beyond the rule of the common law, and to make the debt due from the administrator in that case only, of the first dignity. Tho reason why the same rights were not given to an administrator succeeding an executor, was, that it would have defeated the executor’s right to the surplus of the assets administered by him. The effect, of this statute was, to enable «'editors to recover their debts, after ¿he estate not accounted for came to the hands of the sue-seeding administrator, out of that fund which they could not reach before; but this only in the case of an administration after an administration, and not in the case of an. administrator de bonis non, after an executor; and in effect, placed the rights of the distributees against the estate of the first administrator, in that singlo case, upon the footing etf a debt, of the, highest dignity.
The Act of 1705, chap. 33, sec. 13, provided, that when any person shall be chargeable as executor or administrator, or otherwise, with the estate of any person deceased, or with any orphan’s estate, and shall die so chargeable, the estate of such person so dying, shall be liable to pay and satisfy such other deceased person’s or orphans es-‘ fate. before anv other debt, whatever. This Act, in con *86 nection with that of 1661—2, made, in effect, a legacy due from an executor, and the claim of the second administrator after another administrator, claims of the first dignity; but made no provision for creditors, in the case of an executor dying testate or intestate, nor in the case of an administrator, except incidentally as aforesaid.
The Act of 1711, chap. 2, sec. 3, provided that, “if it should so happen, that any executor shall die intestate, not having fully performed his executorship, or any administrator shall depart this life, not having fully administered the goods of the intestate, it shall and may be lawful for the Court that granted the certificate for obtaining such probate, or commission of administration, to hear and determine the right of administration, and to grant certificate for obtaining letters of administration of the goods not administered,. to such person as by this Act shall have a right thereto.” This was the precise form of the administration de bonis non at the common law; and this Act, which repeals all Acts concerning any matter or thing coming within the purview of that Act, repeals the Act of 1661—2, which directed an administration of the goods not accounted for foy the first administrator.
In 1730, an Act passed, which has been re-enacted into our last Code, subjecting executors and administrators of executors and administrators, who had wasted or converted the assets, to the same liability, as the executor or administrator was subjected to. I have already observed how this liability directly to the creditors, conflicted with a supposed liability to the administrator de bonis non. Creditors, to whom a remedy was given by this Act, were entitled to claim against the assets of the executor or administrator, as for debts of the highest dignity, by virtue of the Act of 1705. But, the dignity of all the debts was equal in that respect, and a simple contract creditor, recovering first, would have the preference over a specialty creditor; whereas, if the fund went into the hands of an administrator de bonis non,, and was not sufficient to pay all the debts. *87 it would be paid to the creditors, according to the original dignify of their debts. This would be a palpable inconsistency. The Act of 1785, which was re-enacted at the last sevisal, modified that of 1705, so far as to make the estate of the deceased executor or administrator liable, as for a debt of the first dignity, to legatees and distributees only. But, it is, in effect, the same; since the legatees would be responsible to creditors, to the amount recovered by them. The Act of 1661-2, if not repealed by that of 1711, is dearly repealed by the Act, of 1819, repealing all Acts not rc-published in the Revised Code.
The only other statutes, which can he supposed to affect this question, are those which provide for the indemnity of the sureties of an executor or administrator, and the safety of creditors, legatees and distributees. The Act of 1785, (now repealed,) only extended to the indemnity of the sureties, and was, I think, only intended to enable the Court, if the executor or administrator failed to give counter security, if required, to give the same relief to sureties, which creditors, legatees and distributees already had in equity, to compel the executor or administrator to pay the money in his hands into Court, or to a receiver, and to deliver the assets remaining unconverted, to a receiver. 12 Ves. 4, And this, under the statute, might be done in a summary way, by compelling the executor or administrator to settle, pay and deliver, by attachment.
The only remaining Act is that of 1814, re-enacted at the revisa!. If this Act really introduced a new descrip - tion of administrators, (an administrator of the goods not administered, who was entitled to claim those which were converted,,) it would only apply to tho particular cases provided for by the Act; but, I do not think that the statute has this effect. Taken altogether, I think the fair construction of it is, that the administrator de bonis non was intended by the Act, to have only the goods not converted, and not the proceeds of those converted. It provides, that at the, instance of the sureties, the Court may revoke *88 the "authority of the executor or administrator, in whole or in part, and appoint an administrator de bonis non, as if the executor or administrator were dead; or to put the unadministered estate into the hands of the surety or other curator; or make any other order essential to the protection of the surety, having due regard to the,interests of creditors, legatees or distributees. If, under this Act, an administrator de bonis non were appointed, he would have the same rights as, and no more than, an administrator de bonis non had at common law; for, he is described to be appointed as if the executor or administrator were dead; and the statute defines, in effect, the unadministered estate as something which might be taken from one, and put into the hands of another; a definition perfectly appropriate to assets remaining in kind, but not to an unliquidated debt due from the executor or administrator. If the administrator de bonis non, or surety, or curator, appointed under this Act, had a right to claim of the executor or administrator, an account of the converted assets, and to have them put into their hands by a summary proceeding of the. Court, then there would have been little or no use for the additional authority given to the Court, to make any other order upon the subject. That provision I consider as having the same effect, as the Act of 1785 upon the same subject; to enable the Court to secure the fund, by compelling the payment of it into Court, or into the hands of a receiver, by summary process. Upon this construction of the Act, a due regard would be had to the interests of creditors, legatees and distributees. They might still proceed against the executor or administrator, and reach the fund so secured, as if his authority had not been revoked; for, the provision that the suits depending might be continued against the executor, or the name of the administrator de bonis non, or curator, substituted for him, at the election of the creditor, was intended to enable the creditor, if he pleased, to pursue the administrator de bonis ■non or curator, without losing the benefit of his suit; and *89 does not preclude the other creditors who had not sued, from proceeding against the displaced executor or adminisfrator for the goods wasted or converted; as a creditor had a right at common law, to proceed against an administrator whose authority was revoked, and who could only defend himself effectually by pleading and proving that he had duly administered all the assets which came to his hands, except what he had delivered over to the succeeding administrator; whilst the construction that such administrator de bonis non, surety or curator, had a right to claim the assets converted, would impair the rights of creditors, legatees and distributees in various ways; some of which only will be alluded to. A double commission would be chargeable upon so much of the estate as was converted. The creditors, legatees and distributees, at-least the two latter, would be delayed, until after a frequently tedious litigation, the administrator de bonis non, or surety, or curator, had recovered the fund, and until they could, by another tedious suit, recover it from him, and the surety, who was liable to account for the waste of the executor or administrator, would frequently be the person charged with the duty of calling his principal to account. He would be called upon to assert the interests of persons, whose interests were the very reverse of his. The manner in which this duty would frequently be performed, is easily conjectured; and if the executor or administrator died, the remedy given by statute to creditors against his representative, would either be frustrated, or materially varied, as to their effect, as has been before observed. I do not think that this statute has any influence upon the question under consideration.
It was said in the argument, that the proceeds of the testator’s or intestate’s perishable goods, directed by statute to he sold, ought not to be considered as assets converted; since the executor or administrator, in this respect, acts by direction of the law, and cannot be supposed to have intended by such sale, to convert the goods to his own use., *90 If that bo so, it would not affect the question under consideration; for, if the administrator de bonis non were entitled to claim the proceeds, it would be upon the ground that the sale was not in such case a conversion, not being the merely voluntary act of the executor or administrator, and not intended by him as a conversion. I am inclined to think that such a sale, although a conversion at law, would not be considered as a conversion in equity, so long as the debts remained uncollected; so that if the executor or administrator died before the debts were collected, the bonds uncollected at the time of his death, and which, by the statute, might be assigned to the legatees or distributees, or the money recovered upon them by the administrator of the executor or administrator, might be claimed in equity by the administrator de. bojiis non; upon the ground above stated, on which the cases of a judgment by the executor for the testator’s goods, not enforced by the expeutor in his life-time, and the stocks changed by the executor for the benefit of the estate, were held to be un= administered assets in equity. If, however, the executor had collected such debts in his life-time, and failed to keep the money separate as the money of the testator, so that it might be identified, and had applied it to his own use, this would, both at law and in equity, amount to a complete conversion.
It was also said in the argument, that the general impression in the Commonwealth had long been, that an administrator de bonis non was entitled to call the representative of a deceased executor or administrator to account; and that it was common, if not a matter of course, for such representatives to account for, and pay over, to the administrator de bonis non, all the assets converted by the executor or administrator; and that the Acts of the Legislature already referred to, shew that such has been the impression of the Legislature.
The review already taken of the statutes, shews, I think, that nothing is to be found in any Act since that of 1711, *91 indicating any thing as to the Legislative understanding on this subject, and thai Act, compared with the Act of 1661—8, shews that the Legislature then had distinctly in view, the difference between a commission of administralion of the estate not accounted for, and one of the estate not administered; and that clause of the Act of 1711 was unnecessary for any purpose whatever, but to repeal the Act. of 1661-2, and put all administrations de bonis non upon the same footing, as well those granted after the death of an executor, as after the death of an administrator. A. general power to grant administrations would have embraced administrations de bonis non, to bo granted in all oases, as at the common law; but, such a general grant would have left the Act of 1661-2, in force, and applicable to the case of an administration after an administration. The clause was therefore necessary in that Act, to repeal the Act of 1661—3, and for no other purpose; and accordingly, it has never been thought necessary, in the various revisáis of the law, to re-enact that clause.
That the general impression of the country has been such as is stated, is, 1 think, very probable; and the origin of that impression is easily traced. Commissions of administration were originally grauled by the Governor and Council forming the General Court, and signed by the Governor, upon the certificate of the County Courts, that the party was entitled, and had given proper security; and finally, they were made out by the Clerk of the County Court, and signed by a justice of the peace, upon a similar certificate of the County Court. The practice of actually making out the commission in form, has been, for a great length of time, discontinued; the certificate of the Court, upon which the commission might issue, being sufficient for all practical purposes. No defendant can claim the production of the commission, at law or in ecjuity. Indeed, I have never seen a commission of administration given in Virginia. The form of a commission of administration de bonis non is almost forgotten; and added to this, all attention to plead • *92 ing having for a long time been discontinued in practice^ except in the use of short sentences, as ‘1 nil debet,” “ non assumpsit f “fully administered,” &c. the idea was naturally adopted, that since upon the plea of “fully administered,” an executor or administrator could not defend himself against the claim of a creditor, by shewing that he had converted the assets to his own use; therefore, such a conversion was notan administration; and consequently, the assets so converted, must go to the administrator de bonis non administratis. The reason why evidence of a conversion does not support the plea of fully administered, is not because such conversion is not an administration, but because it is, as to the creditor, not a legal administra» tion. As to him, it is a wrong, but not as to any other. The question of devastavit is not put in issue upon that plea; but the replication puts in issue the amount of assets which came to the hands of the executor or administrator, and their application to the payment of debts of equal or superior dignity, in a legal course of administration, and nothing more. The jury can only find against the defendant the amount of assets in his hands, liable to the creditor’s demand. 11 Vin. Abr. 312, pl. 7. They do not find that he has not fully administered, but that he has not legally administered, so as to bar the creditor.
It was said in the argument of the cause, that if the administrator de bonis non cannot claim an account of the assets converted by an executor or administrator, against his representatives, then in all cases where the representatives of deceased executors and administrators have accounted with administrators de bonis non for, and paid over to them, such assets, the estates of such executors or administrators will be still liable to creditors, legatees or distributees, as if no such payment had been made. It is not proper to decide this question, before it shall be presented in a shape to enable the Court, upon full consideration, to decide it conclusively. If such would be the consequence, it would afford no reason for deciding other *93 wise than according to our convictions of what the law is. If any loss should fall upon a party, by acting under a mistake of the law, this Court has not the power of relieving him. I think it however, not amiss, to state now, that I am strongly under the impression, that the estate of an executor or administrator would not be liable to creditors, legatees or distributees, for the assets so paid over, unless they had, before payment, asserted their claim against his estate, by suit; upon the ground, that such payment was an admission by the executor or administrator of the executor or administrator, that the assets had not been converted^ as in the case of the money kept separate by the executor or administrator, as the property of his testator or intestate, and the other cases in equity before referred to. But, if the executor or administrator had been guilty of a devastavit by paying debts of inferior, before those of superior dignity, or had otherwise committed waste, for which his representative had not so accounted; in the first case, the estate of the executor or administrator would still be liable, to the extent of such devastavit, to creditors, and for the other waste, to creditors, legatees and distributees. Packman's Case, 6 Rep. 18, b; 11 Vin. Abr. 119, pl. 5.
If the practice of the country has been contrary to these views, T do not find that it has ever been deliberately sanctioned by this Court; nor do I consider it as a question of practice liable to be varied and moulded, according to the discretion of the Court; but, as a question of legal right, depending upon the commission of administration, which alone gives any right to the administrator de bonis non, and which gives him a right only to “the goods, chattels, rights and credits, which were of the testator or intestate, at the time of his death not administered by the former executor or administrator;” which, in terms, does not embrace the value or proceeds of goods converted by the executor or administrator; such proceeds not being any part of the goods and chattels, rights and credits, which were of the testator or intestate at the time of his death. This *94 construction and effect of the terms of the commission, is perfectly settled by the common law, and by all the legislation which has any bearing upon the question, here or in England, and which is in conflict with any other construction. The statute giving a remedy to creditors against the executor or administrator of an executor or administrator, for assets of the first testator or intestate, wasted or converted to his own use, by the first executor or administrator, gives to all creditors an equal right to claim under the statute, whether that be in respect to the assets of the executor or administrator, as for a simple contract debt only, or as for a claim of the first dignity; so that, the creditor getting the first judgment, would have the prior right to satisfaction, without regard to the original dignity of the debt, and that, whether his claim was asserted in a Court of Law or Equity; which equality of right amongst the creditors, given fey the statute, would be utterly frustrated, by allowing the administrator de bonis non to recover the funds; since the debts would, in that case, be payable by him, out of the funds, according to their original legal priorities.
If the administrator de bonis non has not this right, the creditors have an immediate remedy against the executor or administrator of the first executor or administrator; in which it is only necessary to prove a waste or conversion to an amount sufficient to satisfy the plaintiff’s demand, and not to settle accurately the accounts of the administration of the executor or administrator; and without the intervention of the administrator de bonis non, all creditors, to the extent of the fund in question, would be secured by bonds given by the legatees to the executor or administrator of the executor or administrator, to indemnify him against debts of the first testator, which may appear and be recovered against him. He alone being responsible to the creditors for the fund for which his testator or intestate was responsible, he is the proper, and only proper person, to whom those bonds should be given; whereas, if the administrator de bonis non has a right to recover this fund. *95 it will bo hurt honed with two commissions instead of one; which would be paid in the other case, or even moro than two, if there were several successive administrators de bonis non. The creditors would be delayed, until after a tedious litigation, the accounts of the first executor or administrator were finally settled in the suit of the administrator de bonis non, and he had been enabled to coerce the payment of the money, and their rights would be varied as aforesaid. They might further be delayed by the necessity of a suit against the administrator de bonis non; and so the legatees and distributees would also be delayed, not only by the first suit by the administrator de bonis nons but by their suit against him for a settlement of his accounts; and the hazard of loss to creditors, legatees and distributees, would be doubled, trebled or quadrupled, according as there were one or more successive administrators de bonis non, from the possible, and indeed common, insolvency of executors and administrators and their sure lies. The hazard of the insolvency of the first administrator is unavoidable; but the,funds would be lost by the insolvency of any of the administrators de bonis non, if they received them, oven although the estate of the first, executor or administrator were good. Many mischiefs, in respect to delay, expense and hazard, would arise from giving to the administrator de bonis non, the right to call the representative of the deceased executor or administrator to account, without one solitary advantage to any party concerned, which they would not have upon the contrary doctrine; and if this was a question, not of legal right, (as to which we are bound to administer the law,) as it is, but a mere question of practice, and we had authority to control it at pleasure, 1 should not hesitate in nay, that every consideration of convenience and justice should induce us io adopt the principles, which I have supposed to be the settled principles of law on this subject.
This case is a good commentary upar, the question, whether an administrator de bonis non has a right to cal? *96 the representative of a deceased administrator to account.. Wernick died intestate, and Marks administered on his estate in 1782, and gave an administration bond, with Coleman as his surety. The latter being anxious to get an indemnity, Marks deposited in the hands of Douglas $ 1500, (which was not equal to the amount of the assets,) to be held by him for the indemnity of Coleman. Marks dying, Coleman took administration de bonis non on Wernick’s estate, and sued the representative of Marks, and the executor of Douglas, in order to recover the @1500, in his character of administrator de bonis non. Douglas's executor answers, that the advances made by his testator to Marks, after the deposit of the $ 1500, exceeded that sum. There is no intimation in the proceedings, that there is any creditor or distributee of Wernick, who claims any thing against Wernick’s representative; and if the administrator de bonis non has the right contended for, such an allegation is not necessary to entitle him to recover. Coleman died pending this suit; and the plaintiff took administration de bonis non of Wernick’s estate. Upwards of forty years having elapsed since the death of Wernick, and no creditor or distributee now claiming, there is the strongest reason to believe that none will ever claim. This at least is possible; and if so, and the present plaintiff could recover the $1500; then, after his death, the next administrator de bonis non could claim it with interest, from his representative; and so it would devolve from administrator de bonis non, to administrator de bonis non, forever, to the exclusion of all other creditors of the deceased administrators de bonis non; the claim of each administrator de bonis non, upon the estate of the preceding administrator de bonis non, being preferred in dignity to any other debt; a more perfect perpetuity than was ever before devised.
The scire facias to revive the appeal should be quashed, as improvidently awarded.
*97 Judge Oo.axter.
This ease brings, for the first time, before this Court, the propriety of a practice, which, it seems to be admitted, has heretofore prevailed without objection, of an administrator da bonis non calling to account the executor or administrator of the first administrator, in relution to the goods wasted or converted by that administrator. The practice, which also seems to have existed, of the administrator de bonis non with t.ho will annexed, calling the administrator or executor of the executor to account for such goods, has also been incidentally debated, as one standing an the same grounds.
The British doctrines and authorities have been brought fully to the view of the Court, and will be first examined, in regard to the practice there; and if such a course would not be permitíed Ihere, I will then enquire whether there is any thing in our laws, which would make it inexpedient, if not unlawful, to change the practice here.
It is said, that in that country executors were entitled io the surplus, where there was no residuary clause in favor of some one else, or something else in the will, shewing that the executor was not entitled to it; and that, except as to creditors, every thing which had been converted by the first executor, belonged to bis estate when he was entitled to the surplus; and though he would stand as trustee for creditors, and his estate be responsible to them, they only had a right to charge the fund in the hands of his representatives; for, if the administrator de bonis non got it, whether necessary for creditors or not, that which might belong to the estate of the executor would thus be taken from it; and that therefore, the commission of the administrator da bonis non with the will annexed, only authorised him to take possession of the goods of the testator remaining in kind, or unconverted: that as to the administrator, inasmuch as before the Statute of Distributions, he was entitled always to the surplus, the like in *98 justice would follow, if his executor or administrator should be liable to account, except as to creditors, for the assets converted, and that consequently, the commission to the administrator de bonis non only gave him a right to the assets remaining in kind, or unconverted.
Whether the Statute of Distributions itself ought to make any change in relation to the powers of the administrator de bonis non, under his commission, and especially in the case of intestacy, may be worthy of enquiry. One thing, however, I suppose must be admitted: that if any positive statute, or one or more, which could not be fully carried into effect, without enlarging his rights under his commission, so as to extend them to such a subject, had been enacted, either directly extending the power thereto, or, by necessary implication, doing so, the commission, though issued in the usual form, would extend to, and enable them to claim, the fund, as fully as if, from the beginning, such fund had been considered unadministered assets. If it is. declared by statute, to be unadministered assets, the administrator’s right to it, under the commission, would necessarily be extended to it.
Before the Statute of Distributions, I believe it was admitted, that where there was no residuary clause in favor of some one else, the executor of course took the surplus; but, after that statute, as the law provided a successor to an undisposed of surplus, if it appeared not to be the inten» tion of the testator to give it to the executor, but to leave it undisposed of, the executor was held a trustee of that surplus, for the next of kin, according to the statute; and so, in like manner, was the administrator, in all cases. Whenever the executor or administrator then converted the goods or any part of them, and died leaving a surplus in their hands, not administered, in payment of debts, and the executor was not entitled to the surplus, they were considered as trustees of that fund, as well for creditors as next of kin, and their estates answerable therefor This fund, before the statutes which gave a suit to creditors *99 against tho representatives of executors or administrators, was a mere trust to be enforced in equity in favor of ereditors and next of kin, &c.; and it would seem to me, ought regularly to pass into the hands of the administrator de bonis non, for their benefit; and that his commission ought to bo held to extend to it, as it sometimes does to subjects, which are not considered in equity as having been converted. It seems, however, to have been the practice in England, cither for the creditor or next of kin to go into equity, and there reach the fund, and have it applied as by law it ought. Whether this can be done in all cases, without calling into Court the administrate!' de bonis non, I am not well advised. I incline to think it has been done in many cases without doing só. As to creditors suing, without making him a parly, it may he that they could do so, in cases where they had established tho debt against his predeees» sor; but where that was not the case; and unless it appeared that there was no dispute or difficulty as to that matter, I presume he must make the administrator de bonis nan a parly; for neither he, nor the distributees, would be bound by a decree charging the estate with a debt, in a suit to which they were no parties. There may be some peculiar eases, such as actions for escapes on mesne process, before a debt has been established, in which the debt must bo proved, in order to shew the injury that has been done; but if there are such, it proceeds from the necessity of the case, and because the party who has done the wrong, is not, in this way, to shield himself from the consequences of his own acts: but it will be, to me at least, a new doctrine, if a decree or judgment can be recovered, so as to charge an estate with a debt, without a representative of the estate being before the Court. If such decree would not charge the estate, so as to end the matter, it would he for want of the necessary parties; and if it did not end the matter, such decree would be wrong.
When the next of kin come, I presume they must all some, and they of course being entitled to the adminis *100 tration, would be entitled to the fund, subordinate alwayy to creditors, who can pursue the fund in their hands, and to secure whom a Court of Equity in England will require bond to refund, whenever it is deemed necessary. But, if some of them only have been appointed administrators de bonis non, or it has been granted to a stranger, then if the suit is by the next of kin, the administrators themselves would be parties plaintiff, with others. But whether, in the case of the stranger, they can proceed without making the administrator de bonis non a party, may be a question; for he represents creditors, may have paid debts himself, and this fund may be necessary to reimburse him, &c.; and there being such a representation of the estate, of which this fund is a part, it may be and probably is necessary, that he should be a party.
Be this as it- may, there are certainly many cases in England, in which the next of kin have recovered against the executor himself such fund, when he was not entitled to the surplus, but claimed to hold it.
In the case of Corden v. Naden, Prec. in Ch. 12; Ibid. 92, the testator gave legacies to his relations, amounting to nearly the whole of his estate, and also gave legacies to his executors, and lived several years, during which he increased his estate considerably. In a suit by the next of kin against them, they were decreed to distribute it.
So in Farrington v. Knightly, Ibid. 566, there was a similar decree, and it was there said, that since the Statute of Distributions, the succession to a personal estate is as much established, as to real before the-statute; and that the executors should claim to have the surplus to their own use, because they are made executors, would be to construe the will by a rule which probably the testator did not understand; for, he might be ignorant of the import of the word executors, or never intended, by making them such, to give them his personal estate; and that here it would be more unreasonable, because they had legacies given them. So that executors, says the Judge, are but trustees, and *101 are to have nothing more to their own use, than what the testator plainly intended them as legatees or devisees, and not the whole residuum by virtue of t.he executorship. The Lord Chancellor then puts this case: If dl. and B. severally make their wills, and make C. executor; and dl. gives him the surplus, but B. does not, and then C. dies intestate; in this ease, the personal estate of dl. and B. shall go several ways. For, the administrator of C. is admitted to the administration of the personal estate of dl. but the next of kin are to have administration to him; which proves that, C. as to that, was hut a trustee. Now, although the next of kin of B. might come into equity, according to the British practice, without taking out administration de bonis non to B. and gel this surplus, or the administrator of C. might retain the surplus of dl’s estate, without taking administration de bonis non to dl. (that being considered there the shortest way, as creditors could still pursue the fund,) yet they might take the administration de bonis non, and it is their right to do so; which gives them the right to claim immediately, and without this form.
This doctrine is exemplified also by the ease of Rachfield v. Careless, 2 P. Wms. 158, where a legacy of 51, was given to the executor for his care in fulfilling the will. Ho notwithstanding claimed to hold the surplus, and the next of kin sued for it. It was there declared, that the bequest of 51. amounted to a declaration of the trust, especially considering that it is a fundamental rule in a Court of Equity, that an executor is but a trustee; and, on Ms dying intestate, so much of the testator’s personal estate as remains unadministered, must go to the testator’s next of kin, to wit, to the administrator de bonis non, and not to the administrator of the executor. I will here remark, that in both these eases, the Judges, when speaking of the right to the thing, speak of it as belonging to the administrator de bonis non, as distinguished from the administrator of the executor. As to the jurisdiction of *102 equity to give it immediately to one who may ultimately be entitled to receive it from the one having the right to receive it in the first instance, it is another question. I take it that the Judge in this last case, could not have intended to say, that the unconverted assets went to the administrator de bonis non. No one could doubt that; for, no one else could get them. The next of kin, unless they administered, could not. They remained without an owner, until administration; when the legal, not the equitable right to them, would vest in the administrator de bonis non. This was not a suit to recover such nnadministeredassets, or no such decree could have been given; and it cannot be supposed, I presume, tjiat if the next of kin had taken administration, they could not have recovered this subject, not administered in payment of debts, in that character; but must sue merely as next of kin. It is because they would be entitled to it in that character, and because it is an equitable subject in the hands of a trustee, that they may come at once into equity, where substance alone is regarded, and call the trustee to account, without the form of taking administration.
So, too, before the statute of Charles, creditors were also relieved in equity, and indeed in one case in the Exchequer, they were sustained at law before that statute, on the principles of the civil law. 3 Keb. 517. But that case seems not to have been approved of, or followed up.
Thus, in Chamberlayne v. Chamberlayne, 1 Ch. Cas. 257, a few years before the statute of Charles, it was ruled, that if an executor make devastavit and die, his executor is liable to make it good to the creditors, if he has assets from the executor.
So, in Vanacre's Case, lb. 303, the same was ruled, and the creditors directed to come to account, and have satisfaction proportionably; and it is there said, that an executor, in case of devastavit, is to be considered in the nature of a trustee of an estate.
*103 So, in Price v. Herbert, 2 Ch. Cas. 217, the Lord Chancellor said, “ Although, by the common law, when the executor' warder, his. executor shall not bo liable, because it is a personal wrong, it is otherwise here; and the common law will come to it at last;” and it was decreed that the executor should answer for the waste, as far os he has assets.
These cases would seem to be founded on the waste by the executin', which happens when judgment has been recovered against him, and nulla luma returned. I have seen no case, nor have I searched sufficiently to say that: there are none, where a debt has, in the first instance, been set up in a suit charging such waste in a bill in equity; but, I am content for the present to say, that it may, if proper parties are before the Court.
But, as was predicted by the Judge, the common lavs, did, in a short time thereafter, come to it to a certain extent, by the statute of 30th Char. 2, explained and extended by that of William 8? Mary. Those statutes in substance provided, as ours has since done, that al) and every the executors and administrators of any person or persons, who, as executor in his own wrong, and the executor or administrator of an executor or administrator of right, who shall waste or convert to his own use, goods, chattels or estate, of his testator or intestate, shall be liable and chargeable in the same, manner, as his testator or intestate might have been.
It is contended, that this statute gives a right to the creditor to sue the executor or administrator of an executor, or the executor or administrator of an administrator, when the executor or administrator has wasted, not only in the case where the creditor has recovered a judgment against the executor or administrator, and had a return of nulla bona, so as to fix the devastavit on him; hut to sue on a bond or other chose in action; ami not only to sot up that debt at law against the estate, but to suggest and prove a tfevmtarit >n the executor or administrator. 1 doubt this; *104 and if this is not the ease, but if he can only sue under this statute for a devastavit, when he could bring such suit against the executor, then a large class of creditors could n°t sue under this statute.
It becomes,necessary, therefore, in the first place, to en-quire, under what circumstances the executor himself -was liable to an action for a devastavit, and see the reason why he was so liable; and then see how far those reasons and others will bear me out in supposing, that his executor or administrator ought not to be liable in any other manner, or in any other case.
The case of Wheatley v. Lane, 1 Saund. 216, is, perhaps, the first case but one, which clearly decided this question. There the creditor had obtained a judgment against the executor, who, he alleges, had wasted the assets, &c.; and the action is in the debet, suggesting this waste, &c. It was tried on a demurrer to the declaration, and many objections were made; amongst others, that it was an action of debt for a tort, which dies with the person; and if debt will lie, it may bo brought against his executor; and that for the same reason that this action is brought on a judgment against him, it might be brought on a judgment against the testator, or on a bond entered into by him, &c.; that in case the action would survive, it would be doubtful whether it would be debt on a judgment, or simple contract, &c. But, the action was sustained.
It will be found, however, that though attempts were made to carry it further^ this action of debt for a devastavit against the executor himself, has never been sustained, except where a judgment has been first obtained against him, in which assets have been admitted, or found to be in his hands, and where, on a return of nulla bona, it appeared that he had wasted them. It was held, too, that it did not survive against his executor or administrator; and therefore, the statutes giving the suit against them, were enacted. It was also held that this action for a waste by the executor, did not lie against him on a judgment against, or *105 on a bond executed by, his testator, notwithstanding the privity between them, because of the difficulty of pleading and making a proper defence, &.c.; and because it was with difficulty the action was introduced, and the Courts would not carry it further.
All the reasons why it should not bo sustained, in such ease, against the executor himself, apply, if possible, with ten-fold force, to shew that it ought not to lie against hi;? executor or administrator; and hence it no doubt has followed, that we see no case in which this action has been sustained, since the statute, against the executor or administrator of an executor or administrator, except on a judgment against the executor or administrator, establishing the debt, and fixing a devastavit on him. It is founded on the tort, and though there is also a judgment, it nevertheless ranks only as a simple contract claim; and notwithstanding Sergeant Williams, in his note on the above ease in Saunders, seems to intimate that it may be sustained against the executor or administrator of the executor or administrator, without á previous judgment establishing a devastavit, yet he cites no case to support his position; and I therefore take it for granted, that none such had then occurred. I feel confident that he had not examined the matter with reference to the pleadings, or he never could have come to that conclusión.
How an administrator of an executor can be privy to the first testator, so as to defend himself against a suit brought on a bond executed by the testator, I cannot perceive. The only case which looks at all that way, is that of Trivett v. Jeffries, given to us in 4 Vin. Supp. 192, pl. 2; and which was a suit against the executors of an administrator, on the bond of the intestate, and was prosecuted on this ground, as I understand the case. The administrator, at his death, had goods of the intestate, not converted or wasted, enough to pay the debt. These ramo to his executors, anil were in their hands at the in *106 stitution of the suit. There was no toaste by the execu* tor, charged. There was no administator de bonis nony and the question was, whether these goods could be charge ed in the hands of the executor of the administrator, as they might have been in his hands. It was held that the action could not be sustained, though there was a verdict finding that there were assets, as alleged; for, there was no privity between the executor and intestate.
It was said that it could not be maintained at common law for that reason; and that it could not be under the statutes of Ch. 2, and Wm. & Mary, for there was no devastavit in the executor charged; and hence it has been supposed that this was impliedly saying, that such devastavit might have been charged in that case, so as to bring it within the statute. But I do not think so. What was meant was this; that a devastavit must be charged to bring the case within the statute; but here it was not only •not charged, but it was not a case in which such charge could be made; for, it is on a bond of the intestate, not on a judgment against the administrator.
It surely could not have escaped the Court in that case, that a charge of a devastavit would not have created any privity between the executors and the intestate, so as to have enabled them to defend that suit; to plead that it was not the act and deed of the intestate, obtained from him by duresse, or that he had paid it in his life-time, &cc. How could such debt, in the first instance, be set up against them, so as to charge the estate of the intestate in their hands ? Did the statute mean to alter the common law, which requires that the suit which is to establish the debt, shall be brought against him who is privy to, and represents as well the person, as the estate, of the intestate? It never has been so heldj and never can be. It has only been held to continue the action which once accrued against the executor or administrator for a devastavit, and which, if not given against his executor or administrator, would die with him.
*107 in addition to the above cases on this subject, I refer to the cases of Berwick v. Andrews, reported in 1 Salk. 314, and 2 Ld. Raym. 971; to an anonymous case in 1 Vent. 292; to Ent v. Withers, Ibid. 321, which will bo found also more fully stated in 3 Keb. 797, and 825; to Bathurst’s Case, 2 Vent. 40; and to Brown v. Collins, 3 Keb. 462.
But, the administrator of an executor is sued on a bond of the testator, charging a devastavit in the executor, and he pleads that the executor fully administered, and it turns out that he did pay away, in discharge of debts, the whole of the assets which he bad converted, but they are debts of inferior dignity to the bond. Still, I maintain that this is not necessarily and per se a devastavit; for, he may have left assets enough in kind to pay the debt, and which have gone over to the administrator de honis non, and which would have been rendered in execution, had judgment been recovered against the executor. Surely this would be a good defence; otherwise, however large the estate, no executor ought to pay debts of inferior dignity, without first converting the whole of the assets; for, if ho does, and dies, and the unconverted assets go to the administrator de. bonis non, who wastes them, the estate of the executor will be answerable. Any course of decision, leading to such injustice, can never have my support. He has a right to make the defence, or he has not; and if he has, how is it to be tried in this suit at law on the bond ? Assets enough, or some assets, may have gone to the administrator de bonis non. He may have wasted or paid debts of inferior dignity; and if he has, who is to sustain the loss? And how is this to be established in a suit to which he is no party ?
Again. In England, this claim, as before said, is but in nature of a simple contract; and there, if the executor or administrator of the executor or administrator, pays out debts of any dignity, he stands safe; but. here, the claim,, if sued for by the administrator de bonis non, if he can mo for it, or by the legatees or next of kin, is a debt of *108 the first dignity. But if, in a suit at law by the creditor, it would only rank as in England, there will be difficulties and dangers here on all sides, which would not beset the road to justice in England. I incline to think that would be its rank at law. It is founded on the tort, according to the very terms of the statute giving the suit; and which leaves it at law, as in England. How a Court of Equity would consider it, on principles of substitution, and permitting the creditor to stand, as it were, in the shoes of the next of kin, &c. is another matter.
Restrain the cases, then, to those in which a debt has been established in a suit against the executor or administrator, and the devastavit fixed, and all those difficulties vanish. This fixes a debt against the executor, and there is no plea of fully administered, except as to his estate.
Thus far, then, I am willing to admit that in England, the practice has been for the creditor to sue under these statutes, where a devastavit had previously been fixed by judgment as aforesaid; and when that was not done, they went into equity, either against the executor or administrator of the executor or administrator, or the legatees or distributees, &c. as the case might be; inasmuch as the Courts of Equity were open to them, as well before as since the statutes. . But, our practice has been different. Here the administrator has gone for the fund, as has been first stated.
This practice will be found to have originated, in the first instance, in positive statute, passed upwards of a century and a half ago; and even if that statute has been repealed, or itspolicy changed by a subsequent statute, (which I will hereafter deny,) still it will befound that our lawson the subject of executors and administrators, and of the estates of testators and intestates, have, from time to time, during that whole period, undergone so many changes and alterations from those of England, all concurring to shew the propriety of our practice, and enacted under a full knowledge of its existence, and many of which laws, it seems to me, cannot *109 well stand or be executed under the proposed change of practice; that I think that practico, if not now sanctioned by positive law, has an equally legal and sure foundation. Hence it has followed, that there being no necessity for creditors to resort to their remedy at law under the statute, even where they had judgments, or to equity where they had not, inasmuch as the administrator de bonis non got in the fund, we hear of no suits either of the one kind or the other by creditors.
As to legatees or distributees coming into Court directly, and where there is no administrator de bonis non, or where there is, without bringing him in as a party, in order to reach such fund and distribute it, the principles of our decisions, as I understand them, are opposed to such pretension. Here, it is considered, as I understand, that every fund that is subject to debts, must go into the hands of one who can he sued at law for the debt, who gives bond and security, can bo ruled to counter-security or displaced, and the fund taken from him; and it is not enough that the party may be onlifled, after debts a,re paid. Hays v. Hays, 5 Munf. 418. We have, it is true, made some exceptions to this; as where a suit has been long pending, no debts appearing, &c. on the party giving bond and security. But, bond from such a party is not like that of an administrator. He can be displaced in a summary way, &c. but the legatee cannot. The structure of our laws, then, arising from the situation of our country, is different in this respect, as in many others, from those in England; and hence the propriety, and indeed the necessity, of a different practice.,
But, suppose that in England, (as I incline to think it is here, at least since the Act of 1785,) there was no such thing as an executor having the surplus, except by express residuary bequest; and let us go further, and suppose that no such thing had ever existed there, either as to executors or administrators; can it be supposed, that it ever would have been doubted that the administrator de bonis non was entitled to get into his hands every thing to which cretli *110 tors and next of kin were entitled? The reason for the contrary opinion and practice never would have existed, and we cannot presume the practice would. But, our eai ly laws expressly gave the right to the administrator de bonis non, to call in this fund.
The Act of 1661, 2 Hen. Stat, at Large, 92, provides, that where an administrator dies before he has given an account of the estate and obtained his quietus, the Court may grant the administration of that estate, so not accounted for, to some other person, who may, by virtue thereof, call the heirs, executors or administrators of the former administrator to an account, who shall pay out of the deceased administrator’s estate, all such debts as shall be found due to the estate he administered on, in the first place.
Again. By the Act of 1705, 3 Hen. Stat. 371, sec. 13, it is provided, that where any person is chargeable as executor or administrator, or otherwise, with the estate of any person deceased, and shall die so chargeable, the estate of such person shall be liable to pay and satisfy such other deceased person’s or orphan’s estate, before any other debt, &c. Thus, the provisions of the other Act, are extended to executors as well as administrators, not only as to the dignity of such debt, but as to the accountability to the administrator de bonis non; for, in no other way can it come to the estate; and it was not until long after this, (viz. in 1730,) that we had a statute, 4 Hen. Stat. 285, similar to those of Char. 2, and Wm. & Mary, empowering creditors to sue. Mark the phraseology of this law. The estate of the trustee shall be answerable. How ? Not by suit against the heir, legatee, fcc.; but the representatives of the personal estate most certainly. To whom answerable ? To the deceased person’s estate; not to the heir, distributee, &c., but to him who has a right to the personal estate, to wit, the administrator de bonis non. Our Courts of Equity, then, as early as 1661, had jurisdiction at the suit of the administrator de bonis non, to call *111 ¿he representatives of the first administrator to account; and since 1705, to call the executor or administrate of an executor to account; and it has been constantly the practice to do SO.
Shall an after statute, then, giviug’ a right to creditors to sue in a particular case, be considered as operating more than to give a remedy cumulative, as it were, to creditors in such cases; or shall it be considered as abrogating a practice, which that great feature in the law, in relation to the priority of such claims, seems to me to require a continuance of, merely because subsequent Acts may not repeat and continue, in the precise terms of the Act of 1661, the liability to the administrator de. bonis non? Arid this, under the idea of a legal right in the creditor to be protected from the effects of a statute, passed twenty-five years before the Act, under which he claims this right. This statute, then, cannot repeal or alter that of 1705.
Our Courts are full of cases of suits by the administrator de bonis non claiming such a fund. This is one of them, in which no one thought of the objection until it came here. On the other hand, where are the cases of suits by creditors against the representatives of executors or administrators, either at law or in equity ? How have they been prosecuted ? Have they set up the debt in such suit, or have they first sued the administrator de bonis non for that purpose ?
But, suppose the administrator de bonis non says to the creditor, “I have no assets; go against the representativo of my predecessor; he wasted assets enough to pay your debt.” But, the creditor says, 45 Trae, 1 have found that out; but your predecessor left no estate beyond enough ip pay his own bond debts. My claim is in nature of a himple contract, and of inferior dignity. Tour's would stand higher; you must go;” or “/cannot go, because 1 have no judgment, establishing a devastavitWhat could the administrator de bonis non say to this ? If ho failed, would or would it not lie a devastavit ?
*112 All these inconveniences may be avoided by adhering to the present practice; for, if the administrator de bonis non has a right to call for all the assets not administered, that is, not paid away in debts, by the executor or first administrator, and the creditor establishes his debt against him, and he has properly administered all the effects which have come to his hands; and this creditor cannot be paid, and if the executor or first administrator has paid debts of inferior dignity, not leaving enough to pay this debt; then, the way is open and plain for him to go into equity against the estate of that party who has done him this injury.
Whether the executor, in this State, has been entitled to the surplus, since the Act of 1785, has never been brought before this Court, and ought not to be decided incidentally: but as some reasons have been given to shew that he may, I will merely observe, that as before shewn, Courts of Equity, ever since the Statute of Distributions, have treated them, whenever they could, as trustees. Our early statutes, before cited, clearly treated them as such, and gave the surplus to the administrator de bonis non. All our laws, in short, requiring them to give bond, holding them to counter security, &c. have placed them more in that character, than they stood in England. It is just too, that in all cases they should be so. And it was on a view of those ancient statutes, that I said in Dykes v. Woodhouse, 3 Rand. 312, that if this question was res nova, I would have serious doubts about it, even before the Act of 1785.
When the Act of 1785 was about to provide for the succession to intestate’s estates, and provides that when any one shall die intestate as to his goods and chattels, or any part thereof, what did the Legislature mean by the words or any part thereof? If they intended a partial intestacy as it regarded an executor, by making an executor only of a part, it was unnecessary to use those words; for, the general law, as it before stood, distributed in such cases. So too, of a total intestacy, as it regarded the appointment *113 nr qualification of an executor, either because no executor is named, or because the executor refuses. In these cases, although there is a will bequeathing the whole or greater part of the estate, there is a technical intestacy; insomuch, that an administration with the will or testament annexed, is to be granted. But, in all those cases, the surplus would be distributed under the law as it before stood. To coniine the words, then, to those, or like cases, might seem to impute to the Legislature a work of supererogation. The matter in hand was to provide how estates shall go by law, if the owner has not declared his wish on the subject. If he has, that wish must stand, although he has not appointed an executor, and in legal phrase, is intestate. It did not mean, then, that hind of intestacy; for, it does not dispose of the estate in that case. But at present, it seems to me, that it intended to provide, that when the owner gave no other destination to his property by will, with or without an executor, he was to bo considered as intestate in that sense of the word, as to such property, and that it should be distributed. This gives an operation and meaning to the words, aud would introduce something new, or settle what might have heen before doubtful; and in this way, we can account for their introduction.
If my impressions aro right as to this matter, it is surely an additional reason why wo should adhere to the present practice, as one reason for not giving the fund to the administrator de bonis nan no longer exists.
But it is said, that the Act of 1711, repealing all Acts within its purview, not having re-ena-’ted the provisions above noticed in former laws, as to the right of administrators de bonis non to call for the account as above mentioned, repealed those Acts; at least, that it repealed the Act of J,6'SX. But, there are many other important provisions In former Acts, in relation to estates of testators and intestates, which are not embodied, in this Act, such as that declaring the right of the Commonwealth io the surplus, io *114 case there be no next of kin; the exemption of an executor or administrator from a personal judgment, until a devastavit is proved; 1 Hen. Stat. 446; the liability of the justices for failing to take bonds; the priority given to claims against the estates of executors or administrators above mentioned, and which is in the same clause; provisions for counter security; the right to demand a refunding bond, &c. Must it, in short, be considered a repeal of every provision thereafter existing on the subject of deceased persons’ estates, not again provided for in that Act ? It would seem to me, that this would be giving an unreasonable latitude to this repealing clause.
The former laws had confined the probate of wills and granting administrations, &c. to the County Courts. This Act extends it, in certain cases, to the General Court, and subjects them, in case of neglect in taking bonds. Could it be supposed that they were to be subjected, and the County Courts not? The evident object of this Act was more clearly to define the manner of granting probates, letters of administration, and of administrations de bonis non, and how to be authenticated, &c., prescribing the forms of the bonds to be given, oaths to be taken, &c.; and as it regards this particular question, it would be strange to suppose that it was intended to take away the right of the administrator de bonis non, to call for the accounts in question, when the same Act, in the 4th and 9th sections, (speaking of the effect of probates and administration prescribed by that Act, and which includes of course those of administrators de bonis non,) declares that it shall empower and enable them to sue for, recover and receive, by all lawful ways and means .whatsoever, all and singular the goods and chattels, real and personal, and all and every the estate or estates, as any executor or administrator might lawfully do, by any ways or means whatsoever. Now, in what way, and how far, could executors and administrators, and administrators de bonis non then recover ? They could then recover the very fund now in question.
*115 But, it is contended, that the terms on which the commission as administrator de bonis non is to issue, confines him to what is technically and at common lato unadministered assets. Those terms are, “And if it shall so happen that any executor shall die intestate, not having fully performed his executorship, or any administrator shall depart this life, not having fully administered the goods of the intestate, it shall be lawful, &c. to grant certificate for obtaining letters of administration of the goods not administered. ” Then follows the clause declaring the effect of probates and administrations, as above mentioned. It is said, that these terms bring the case within what is technically an administration de bonis non in England, and. the clause was intended to repeal, and did repeal the Act of 1661; so that thenceforth the administrator de bonis non should not call for the accounts, as by that Act directed, and as had been done for fifty years.
In the first place, I am not clear that it is brought within the technical language of the commission of an administrator de bonis non.* But, if the policy of the Act of *116 1661, so far as it provided for the accountability now un* der consideration, was extended to executors, as well as administrators, by the Act of 1705, then it will not follow that the Act of 1711 repealed or altered that policy, unless it also repealed the Act of 1705; and I supposed that this would also be contended for, but it has not.
Let us see how the law stood in 1710. An administrator de bonis non, we will suppose, sues the executor of an executor, to recover the fund in question, under the Act of 1785, in order to pay debts; but, it is alleged by the executor of the executor, that the Act does not authorise such suit. I think it would have been answered by the Court in such case, “Here is the Act of 1661, under which, for fifty years, the administrator de bonis non has recovered a similar fund from the executor or administrator of the administrator. It was the intention of the Legislature to extend the policy of that law, not only to the case of an executor as well as that of an administrator,, but to other cases of persons having orphans’ estates. This Act was not intended to repeal that of 1661, except so far as reenacting its policy, and extending it, as aforesaid, repeals it. They must, therefore, be considered as Acts in pari materia, and as having the same object; and, therefore, the action will lie. It ought to lie for another reason. If an executor wastes and dies, it is a wrong which dies with him, and creditors may be injured; and as the Legislature has not provided that this action shall survive, we will consider that they have made this provision, so as in that way to secure creditors; and we will not presume the contrary; *117 especially as the ease of the administrator is combined in the same clause with that of the executor, and the words themselves cannot hear any reasonable interpretation but this. For, how is this fund to go back to the estate of the deceased; except it goes to him who has a right to that estate, to wit, the administrator de bonis non?”
Suppose that there was such a decision of the Courts of that day reported, or found in their records; could we say it was a bad decision, or a wrong construction of these Acts; and that this fund ought to stand out, until the Legislature might thereafter make some provision to enable creditors to sue for it, or until legatees and distributees came of age and recovered it, and against whom creditors could go ? I would say, that it was a most correct decision, a most fair and just interpretation of the laws, and in advancement of justice, not only for the reasons which may thus be supposed to have influenced such Court, but for this further reason. Not only the law of 1661, but that of 1705, makes this claim against the estate of the executor or administrator, one of tin; first dignity; and if it is to remain unsettled, whether the estate of such executor or adminis - trator is or is not chargeable, on account of the trusteeship, until children of tender years shall be able to assert their claims, (for creditors, if there, be any, and if they could, are not obliged, to resort to that fund,) uo debts clue from that estate can be paid with safely. The executor of the executor must come in by bill of conformity, bring in the creditors, the administrator de bonis non, the infants by their guardians, &e. in order to ascertain what is the sum so due, and to be first paid.
Suppose he does, and that sum is ascertained, to whom will it he decreed ? To the guardian of the distributees, when the administrator de botiis non wants it to pay debts, to reimburse his own advancements for (he estate, &c. ? Or to him, for these purposes, and afterwards for distribution ? Surely, I think, it would be decreed to him.
*118 If this was the law in 1710; if the executor or administrator of an executor, could then be called to account by the administrator de bonis non; then nothing is gained to the present question, by proving that the. Act of 1661 is repealed by that of 1711. That must also repeal the Act of 1705, or the accountability still continued.
It is true there is no reported decision, as early as 1710, on this subject; nor have I examined the records of the Courts to see that such has been the practice. But this, I can say, I believe with confidence; that from 1661 until 1705, (44 years) if any administrator died in Virginia, not having obtained his quietus, and there was a second administration granted, that administrator called the executors and administrators of the first administrator to account for any assets converted, and not paid away in debts: that as creditors had not then, nor for many years thereafter, any remedy at law reaching such fund, it was a just and salutary law and practice; and I believe I may also with like confidence say, that from 1705 until 1825, (a space of 120 years more,) it has been the constant practice for the administrator de bonis non to call, as well the executor or administrator of an executor, as the executor or administrator of an administrator to account; and that such right never has been disputed, until the argument of this cause; and I think that these facts must be equal to a reported case, under the Act of 1705, of such decision as I have above supposed.
For these reasons, then, the Act of 1711 did not repeal or alter that feature of the Act of 1661, now under consideration ; and of course, could not repeal the same feature as re-enacted in 1705.
But the Act of 1711 is not to be construed, at this day, as repealing those Acts, for another reason. The compilation of 1733, made under the sanction of the Legislature, (as the title page shews,) contains in it as well the Act of 1705 as that of 1711, as subsisting laws. It is true, the Act of 1661 is noted by its title, and said to be repealed, *119 and by the Act of 1711. But, this note is not to be considered as a statute repealing it because of its improper policy; otherwise, its policy in declaring the dignity of the demand in question, would be repealed. It is no more a repeal or alteration of the policy in this respect, than a similar note in the compilation of 1752, opposite the Act of 1711 above mentioned, repealed its policy. That statute is there marked “ Iiep'd.” and by the Act of 1748, which also has a repealing clause, and may be said lo have repealed the Act of 1711; but it is repealed merely on the ground, that this latter statute embraced its provisions as to granting probates and administrations; and in this same way, that of 1711 may be supposed to have repealed that of 1661, as to administrations de bonis non, but no further. All laws which may thus be considered as virtually repealed, are always taken into construction as in pari materia, in case of any doubt. Suppose the Act of 1705 had not contained in it a provision in relation to the priority of these claims, and that had stood on the Act of 1661. Would the statute of 1711 have repealed that provision? Certainly not; for, it would not have been within the purvieic of the Act. That Act merely intended to point out “ the manner of granting probates,” ike., not to prescribe the remedies of executors or administrators. This matter of priority of claim, as well as of accountability, regards their remedies, and would not have been repealed, or the Act of 1705, which continues the same matter in this respect, ought also to have been considered as repealed.
That branch, then, of the Act of Í661, was either reenacted or repealed by the Act of 1705, not by the Act of 1711; though the other branch of the Act, and which fell within the purview, was repealed, or rather its policy reenacted and enlarged by that Act. This, I think, is the only sound construction that can be put on those statutes
It is a little remarkable, that even the power to grant a commission of administration de bonis non seems not expressly to be given since the Act of 1748, though it is oe *120 casionally incidentally spoken of. But the constant prat tice has been, and is, to grant them. Could it be said, at. this day, that this power in the Courts does not exist ?
So in 1748, (to be found in the compilation of 1752, p. 229,) a similar statute to that of 1705, is passed, extending its provisions to the case of a guardian, who had not been named before. So, also, in the compilation of 1769, this same law of 1705, and the one last mentioned, are both inserted as subsisting laws; and so the matter stood until 1785.
If I am correct, then, in my understanding and interpretation of the Act of 1705, as well the executor or administrator of an executor, as the executor or administrator of an administrator, was accountable to the administrator de bonis non, from 1705 until 1785, (a space of 80 years,) as the latter had been for 40 years before, and were so constantly sued and brought to account. This, I understand,, to be admitted to have been the practice; whilst, at the same time, though there may be a case, yet I can find no trace of any, where a creditor has taken his remedy under the statute in his favor.
In the Act of 1748, chap. 5, sec. 22, which impliedly repealed that of 1711, as before mentioned, it is declared that all commisions, probates, &c. issued, &c. and signed by the Governor, &c. shall empower and enable executors or administrators to possess themselves' of the estates of their testators or intestates, by any lawful toays or means whatever. If the amount due from a former executor or administrator, is a part of the estate of the deceased, as understood in our laws, and subject to pay debts, legacies, and for distribution, the payment and performance of all which belong to the duties of the administrator de bonis non, (as appears by the Statute of Distributions, which directs that after debts, funeral, and just expenses, &c, the -surplus of all and singular the goods and pjersonalestate shall be distributed, &c.;) how can it be said that such commission cannot extend to it ? I confess I am utterly unable to say that it shall not.
*121 Although the Act of 1785, chap. 61, which extends the principle so as to embrace not only executors, administrators and guardians, but committees of idiots and lunatics, makes a change in the phraseology, by declaring that the executor or administrator of the person so chargeable, shall pay so much as shall be due to the ward, idiot or lunatic, or to the legatee or person entitled to distribution, before any proper debt, &e.; it cannot be supposed that the object was to change what had theretofore been considered the settled law and practice. I say so, because no such change is indicated, except by a slight change in phraseology. It was not intended, surely, to cut out creditors; and if that law wras intended to take away the surplus from executors, and thus to remove one reason why the administrator de bonis non should not have the action, it can hardly be supposed to intend any change in the practice on this subject, as to him. I say so the more confidently, for this further reason, that so far from any grievance under the formes' practice existing, which that Act may be said to remedy, that same practice has gone on yet forty years more, since that Act, without mischief or complaint, that we have heard of; successive Legislatures, after distant periods, re-enacting and extending the principle, without any declared intention to alter a practice, which must have been so well known and understood.
This Act of 1785, also introduces a feature into our laws, which has been, from time to time, much extended, and which seems to me to have a strong hearing on the other branch of the enquiry; as it seems to me to cut up almost every suit at law, which might have been brought by creditors under the statute aforesaid. It declares that no surety of an executor or administrator shall be answerable for any omission or mistake in pleading, &e.; and the Act of 1806 provides, that the executor or administrator himself shall not he liable fur false, pleading, non-pleading, mispleading, &c. in any action then pending or thereafter to be brought, &c.} provided that judgment may he given, so far as asset® *122 may be found in his hands. This provision is not only in the Act of 1819, but it further provides a remedy, which surely is better than that given before, if that was restricted t° a suit on a judgment as I have before contended, by enabling a creditor, after obtaining a judgment against an executor or administrator, to bring suit on the official bond against the executor or administrator, and his sureties, or either of them, or the executors or administrators of either of them, fee.
If an executor of an executor is not liable to be sued, except when a devastavit has been established by a judgment fixing such devastavit, (as I hold to be undoubted law;) and as there will be few cases indeed, in which such devastavit will hereafter be established by the hxsX judgment; this last Act, giving a remedy on the official bond, will, I think, forever put an end to any use, which the creditors might wish to make of the statute, and which, even without this alternate remedy, has remained, I believe, a dead letter in our statute book, for upwards of a century.
Thus, at a period of our legislation, when every reason for a change of practice has, from time to time, been more and more taken from under us, and when the remedy of the creditor under our former statute always doubtful and surrounded by difficulties, has become entirely useless and unnecessary, (a better one being given to him) we are to interpose on some supposed legal right that he has to our interposition, so as to uphold his claim under a statute never to be resorted to, and change a practice of 150 years standing, which, to say the least of it, has some plausible ground of law to stand on.
But say that an executor may, notwithstanding the Act of 1785, be still entitled to the surplus, and that he also is entitled to our protection. If so, and the administrator de bonis non calls on his representative for the fund in question, and which he would necessarily do by a suit in Chancery; might not that Court only, and from time to time, *123 decree what was necessary for the payment of debts? If a creditor sues for it at law, he will recover the fund, although there may be enough in the hands of the administrator de bonis non to satisfy him. It would therefore be more just, even on this score, that the administrator de bonis non, and not the creditor, should get the fund.
On the whole, I can see no reason for changing otn practice; and it seems to me, it is one of those cases, ia which it. may be better to do too little than too much. In Dykes v. fVaodhouse, we did not go according to what may be the British practice; but looking to our own statutes, and the reason and nature of the ease, gave the scire facias, or action of debt, to the administrator de bonis non.
I think, therefore, the process was properly issued, and ought not to bo quashed.
Judge Cabkt.t..
Tliis case was elaborately and ably argued by the counsel, and has been fully discussed by the Judges who have proceded me. I also have considered with very great attention, the arguments and authorities adduced; hut, 1 must acknowledge that I have not experienced any difficulty on the subject; which appears to me to depend on a few plain and obvious principles.
The powers of an administrator de bonis non, must depend on his commission. That commission, in England, is confined to the goods not administered by his predecessor. Bac. Abr. vol. 3, p. 19, 20. Now, although, in some cases, a question may be raised as to what shall, or what shall not amount to an administration, yet it never lias been doubted in England, that when an administrator wastes the goods of his intestate, or converts them to his own use, that is an administration. Being an administrator of the goods by the former administrator, it is without the commission of the administrator de bonis non. And, accordingly, it is admitted on all hands, that, the practico *124 in England, (founded no doubt on this principle,) has in» variably been for the creditor and distributee of the first intestate, and not the administrator de bonis non, to prosecute the representatives of the first administrator for any waste or misapplication of the assets by that administrator.
Such being the law and the practice in Plngland, let us see whether our Legislature has adopted the same or a different system. It is true, that at a very early period of our history, (in the year 1661,) when our Code afforded nothing like a matured system of legislation on the subjects of the probate of wills, and grants of administration, there was a law, 2 Hen. Stat. 92, which provides, that if an administrator died before he had given an account of the estate, and obtained his quietus, the Court should be “ empowered to grant the administration of that estate so not accounted for, to some other person, who may, by virtue thereof, call the heirs, executors, or administrators of the former administrator to an account, who shall pay out of the said deceased administrator’s estate, all such debts as shall be found due to the estate he administered upon, in the first place.”
If this law were now in force, there could be no doubt that the administrator would have the power contended for. But, that law was repealed more than a century ago, and has never been re-enacted.
In the year 1711, the Legislature matured and adopted a complete system upon the subject of the grant of administrations, and instead of the provision in the Act of 1661, above referred to, adopted the following: (See 4 Hen. Stat. 14,) “ And if it shall so happen that any executor shall die intestate, not having fully performed his executorship, or any administrator shall depart this life, not having fully administered the goods of the intestate; in every such case, it shall and may be lawful for the Court that granted the certificate for obtaining such probate or commission of administration, to hear and determine the right of administration, and to grant certificate for obtaining letters of ad *125 ministration of the goods not administered, to such person as by this Act shall have right thereto.” That it was intended, by this law, to repeal the Act of 1661, is a subject on which I cannot doubt. In the first place, the two Acts (relating to the power of the administrator de bo - nis non,) are inconsistent with each other; and in the second place, all former laws “ coming within the purview of this Act,” are expressly repealed. In fact, there could have been no other object for introducing this provision in the Act of 1711, but to repeal the Act of 1661; for, the power to grant administrations de bonis non, would neces - sarily result from the general power to grant letters of administration. And accordingly, we find, that in the edition of the laws published under the authority of the Legislature, about twenty years afterwards, viz: in 1733, the Act of 1661, is given by its title only, as one that was repealed by the Ael of 1711.
It is very worthy of remark, that our Legislature, in repealing the Act of 1661, and in providing for the appointment of a second administrator, have adopted the very terms used in England, as descriptive of the administrator de bonis non. This was not an accidental circumstance, It was the eifect of a design to make our laws conform to those oí England, the policy of which has been tested by long and approved experience. By this law, the commission of an administrator de bonis non is, in this coun - try, precisely the same that it is in England. It is this commission that must determine his rights and powers; and looking at this commission, I cannot see how it is possible to claim for him greater rights and powers, than have been assigned to him by the decision of the English Courts. Those decisions have my entire approbation.
It is said, however, that a different practice has always prevailed in this country. This may be so, or it may not be so; for, the evidence on the subject does not enable me to pronounce any positive opinion upon it. It is true, that in the case of Spotswood v. Dandridge, the Special Court *126 of Appeals said that an administrator de honis non had the powers now claimed for him. But I well remember that the point was not considered by the Court. This is the ^rst ^me ^at the propriety of any practice on the subject, has been brought to the deliberate consideration of the Court; and I cannot sanction any practice that is against the law, however long it may have been pursued.
I am clearly of opinion, that an administrator de bonis non has no right to call to account the representative of a deceased administrator, for a waste or misapplication of the assets; and consequently, that the scire facias heretofore awarded in this case should be quashed, as having been improvidently awarded, and that the appeal should be abated.

 The President absent

 In; Judge Garb. When these remarks were written, I had not seen the rovisal of 1738. My brother Cabbu has since turned my attention to it, and I Gad it containing such complete evidence of the repeal of the Act of 1661-2, by that of 1711, as would have saved me the trouble of the above remarks, had it been known to me. This revisal is contained in a single volume, entitled thus: fi! A collection of all the Acts of Assembly now in force in the Colony of Virginia, (with the titles of such as are expired or repealed, and notes in the margin, how and at what time, they iwere repealed,) examined with the record by a committee appointed for that purpose, who have added many useful marginal notes and references, and an exact table. Published pursuant to an order of the General Assembly held in Williamsburg, in 1727.” Ill this volume, we have the title of the Act of 1661-2, to wit: “ Administrations, to whom to bo granted followed by the word “ Repealed and in the margin, the following words: « Repealed, chap. 2d, 1711the very law, which T. have contended above did repeal it. If stronger evidence could be «¡ecessarv, than the Acts themselves afford, it is thus furnished.

 JVbte by Judge Coartes. It is not clear to me, that if an executor had converted every thing to his own use, and had paid neither debt nor legacy, ar.d dies, that he has performed his executorship ; or that an administrator, if he has in like manner converted and died, without paying debts or making distribution, that he has fully administered the goods of his intestate; though it may be that he has technically administered them. There are no words confining the grant of administration to this technical administration ; as, that it shall be granted of the goods which were of the intestate, and which remain unadministered. \o. The object was, that the administrator de bonis non should, as theretofore, possess himself of the means to perform the will, as the executor ought to have done, and to administer fully, not technically, the estate of the intestate. This was conformable to the spirit of the law of 1661, and of 1705, which then had been long in force and practised under, and the poliey of which is thus impliedly sanctioned, not repealed. I!ut, if a mere technical common law commission was intended to be issued, still I do not think that would necessarily be a repeal of that branch of this section, which relates to the priority of the claim, or the accountability of the representative of the administrator, even if neither of them had been incorporated in the Act of 1705. To bring that subject within the purview, it must appear that there is something in the body of the Act opposed to the poliey of the previous law, that it was intended by the Act to operate on th¡3 matter. That is attempted, by insisting that, a tech *116 nical common law commission is opposed toil; but tliat is not so. If the law had theretofore declared that goods wasted should no more be considered as administered, than goods remaining in kind, the common law commission would as well enable the administrator de bonis non to go into equity for these, as for assets that have been converted at law, though not in equity. But this was in fact the law, as it then stood, and which, I think this very clause recognizes as the law. The repeal, then, only went to that branch of the law, which imperfectly gave administration de bonis non, and which was there more fully and completely provided for.